JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Rachel Foster, 532 Brooklyn, LLC, DEMK, LLC | Moshe Attias, Unity Loft, LLC |

**(b)** County of Residence of First Listed Plaintiff  New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Walter S Zimolong, Esq
Zimolong LLC
P O Box 552, Villanova, PA 19085 (215) 665-0842

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
18 U.S.C. Section 1961, et seq.

Brief description of cause:
RICO

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____  DOCKET NUMBER _____

DATE  11/01/2018

SIGNATURE OF ATTORNEY OF RECORD  *Walter Zimolong*

NOV - 5 2018

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____

MSG

18cv4853

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___ 140 Remsen Street, Brooklyn, NY 11201

Address of Defendant: ___ 3900 Buck Road, Huntingdon Valley, PA 19006-2202

Place of Accident, Incident or Transaction: ___

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1 | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2 | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3 | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4 | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/01/2018       *Walter Zimolong*       89151

Attorney-at-Law / Pro Se Plaintiff       Attorney I D # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify)* ___ RICO ___

**B.   Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)* ___
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify)* ___

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, ___ Walter S. Zimolong ___, counsel of record or pro se plaintiff, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

NOV -5 2018

DATE: 11/01/2018       *Walter Zimolong*       89151

Attorney-at-Law / Pro Se Plaintiff       Attorney I D # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ 609 (5 2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Rachel Foster, et. al. | : | CIVIL ACTION |
| v. | : | |
| Moshe Attias, et. al. | : | NO. 18cv4853 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 11/1/2018 | Walter S. Zimolong | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 665-0842 | | wally@zimolonglaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

NOV - 5 2018



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RACHEL FOSTER**<br>140 Remsen Street<br>Brooklyn, NY 11201, | :<br>:  **Civil Action No.**  *18cv4853*<br>: |
| **532 BROOKLYN, LLC**<br>140 Remsen Street<br>Brooklyn, NY 11201, | :<br>:<br>: |
| **and** | :<br>:  **JURY DEMANDED** |
| **DEMK, LLC**<br>140 Remsen Street<br>Brooklyn, NY 11201 | :<br>:<br>: |
| **Plaintiffs,** | : |
| v. | :<br>: |
| **MOSHE ATTIAS**<br>3900 Buck Road<br>Huntingdon Valley, PA 19006-2202, | :<br>:<br>: |
| **and** | :<br>: |
| **UNITY LOFT, LLC**<br>240 West Roberts Avenue<br>Philadelphia, PA 19144 | :<br>:<br>: |
| **Defendants.** | :<br>:<br>: |

## COMPLAINT

Plaintiffs Rachel Foster, 532 Brooklyn, LLC, and DEMK, LLC (collectively, "Plaintiffs") allege as follows upon knowledge as to themselves and their acts and as to all other matters upon information and belief:

## INTRODUCTION

1.      Defendants engaged in a fraudulent scheme to induce Plaintiffs to provide them with funds that Defendants always intended to divert to their own personal benefit and enrichment.  Defendants fraudulently induced Plaintiffs to invest in a series of purported joint ventures to develop several properties in Philadelphia.  Because Defendants resided in or near Philadelphia and Defendants resided out-of-state, Defendants served as agents for Plaintiffs in the joint ventures.  Despite the trust placed in Defendants by Plaintiffs and their express representations, Defendants always intended to -- and did – redirect the funds -- supposedly designated for the acquisition, development, and rehabilitation of specific properties – to their personal benefit and enrichment, including the purchase of a luxury home in Bucks County, Pennsylvania and property in Atlantic City, New Jersey.  In so doing, Defendants abused Plaintiffs' trust by purchasing properties in the name of other entities, rather than in the name of Plaintiffs, despite an agreement to acquire title in the name of Plaintiffs, who had provided the funds for the purchases.

2.      Because of these disputes, an agreement was executed to unwind the parties' business relationships.  Defendants have failed to fulfill the terms of this agreement.

3.      As a result of Defendants' fraudulent scheme, Defendants are liable for a pattern of racketeering in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §1962(c), conspiring to violate RICO, 18 U.S.C. §1962(d), common law fraud, breach of fiduciary duty, and breach of contract.

4.      Defendants' breaches of contract and tortious activities, which began in 2016, have caused over $3,000,000 in damages to Plaintiffs.

2

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States; 28 U.S.C. § 1332, because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000; and 18 U.S.C. § 1964(c), because Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*  This Court also has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C § 1367, because those claims are substantially related to Plaintiffs' claim under federal law.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants resides in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

7.      Plaintiff Rachel Foster ("Foster") is a citizen of the State of New York.

8.      Plaintiff 532 Brooklyn, LLC ("532 Brooklyn") is a New York limited liability company with a place of business located at 140 Remsen Street, Brooklyn, NY 11201.

9.      532 Brooklyn owns real property located 5822 North 13th Street, 5824 – 38 North 13th Street, 5840-50 North 13th Street in Philadelphia (the "13th Street Properties").

10.      Plaintiff DEMK LLC ("DEMK") is a New York limited liability company with a place of business located at 140 Remsen Street, Brooklyn, NY 11201.

11.      Defendant Moshe Attias ("Attias") is a citizen of the Commonwealth of Pennsylvania and resides in Huntingdon Valley, Pennsylvania.

3

12.     Defendant Unity Loft, LLC ("Unity") is a Pennsylvania limited liability company with its principal place of business located at 240 West Roberts Avenue, Philadelphia, PA 19144.

13.     Attias is the sole owner of Unity.

### FACTUAL ALLEGATIONS

14.     In or about February 2015, Attias, through Moses Construction, Inc. ("Moses"), Eden Plumbing & HVAC, Inc. ("Eden"), and other entities, entered into a contract with SDSP, LLC ("SDSP"), whereby ATTIAS agreed to act as the general contractor for a project located at 4700 Walnut Street, Philadelphia, PA 19139, which is owned by WPHS Venture Partners, LLC ("WPHS").

15.     Foster is a member of WPHS.

16.     While he was working on the WPHS project, Attias became acquainted with Foster's husband Alain Kodsi ("Kodsi").

17.     Attias stated to Kodsi that he owned or could acquire several parcels of real property that could be rehabilitated or developed for a profit, if Kodsi could provide the capital necessary to acquire, rehabilitate, and develop the properties.

18.     Kodsi advised Attias that DEMK and Foster could provide capital for these properties.

19.     Thus, Attias, DEMK, and Foster entered into a verbal agreement whereby DEMK and Foster would provide Attias with the capital necessary to acquire, rehabilitate, and/or develop properties in exchange for a percentage return on their capital and at least 50% of the profits (the "Agreement").

20.     Pursuant to this Agreement, the following properties were acquired:

4

      a.  1328-34 Unity Street, Philadelphia, PA ("Unity Street")

      b.  2016, 2024-34 West Lippincott Street and 3101-19 North 21st Street (the "Lippincott Street Properties")

      c.  704-718, 720 Locust Avenue, Philadelphia, PA (the "Locust Avenue Properties"),

      d.  2230 East Clearfield Street, 2051 North 9th Street, 749 Locust Avenue, 15 North Rittenhouse Street, 35 North Peach Street, 117 North 57th Street, 60 Manheim Street, and 1109 State Street, Philadelphia, PA (the "Small Properties").

**A.**    **Unity Street**

21.    In or about December 2016, Attias advised Kodsi that he could acquire Unity Street.

22.    Accordingly, Foster agreed to provide Attias with $350,000 in capital to acquire and develop Unity Street.

23.    Foster and Attias agreed that Unity Street would be titled in Foster's name and she would receive a 12% return on the $350,000 in capital invested plus 50% of the profits upon the sale of Unity Street.

24.    In December 2016, Attias represented to Foster through Kodsi that he intended to, and would, use the funds to purchase the property in Foster's name, even though Attias intended to use the funds to purchase the property in the name of a wholly owned subsidiary.

25.    In reliance upon this representation by Attias, Foster provided Attias with the $350,000 in capital.

5

26.     Foster later learned that Attias had acquired Unity Street in the name of Unity, which Attias solely owns and control.

27.     Attias has taken no action to develop Unity Street, retains title to Unity Street through Unity, and refuses to repay Foster.

**B.     The Lippincott Properties.**

28.     In or about July 2016, Attias advised Kodsi that he could acquire for development the Lippincott Properties.

29.     Attias and Foster agreed that she would provide him with $365,000 in capital for the acquisition and development of the Lippincott Properties.

30.     In July 2016, Attias represented to Foster through Kodsi that he intended to and would use the funds to purchase title to the Lippincott Properties in Foster's name and that she would receive a 12% return on the $365,000 in capital invested plus 50% of the profits upon the sale of the Lippincott Properties.

31.     Attias, however, never intended to purchase the Lippincott Properties in Foster's name. Attias intended to acquire the properties in the name of an entity wholly owned by him.

32.     In reliance upon Attias's representation, Foster provided him with $365,000 for the acquisition and development of the Lippincott Properties.

33.     Subsequently, Foster learned that Attias had acquired the Lippincott Properties in the name of an entity Lippincott Lofts, LLC, which Attias solely owned.

34.     Moreover, Attias failed develop the Lippincott Properties.

**C.     The Locust Avenue Properties.**

35.     In May 2016, Attias advised Kodsi that he could acquire for development the Locust Avenue Properties.

36.     DEMK agreed to provide $200,000 in capital for the acquisition and development of the Locust Avenue Properties.

37.     In May 2016, Attias represented to Kodsi, as a representative of DEMK, that he intended to, and would, use the funds to purchase the Locust Avenue Properties in the name of a limited liability company to be owned by both Attias and DEMK.

38.     In reliance on this representation, DEMK provided $200,000 to Attias.

39.     Thereafter, DEMK learned that, contrary to his representation, Attias had acquired the Locust Avenue Properties in his own name, as he apparently always intended.

40.     Furthermore, Attias took no action to develop the properties.

**D.     The Small Properties.**

41.     Attias represented to Kodsi that he was skilled at selecting and acquiring properties at sheriff sales and auctions.

42.     Accordingly, DEMK agreed to provide $400,000 to Attias for the acquisition of suitable properties at sheriff sales and auctions.

43.     Attias and DEMK agreed that DEMK would receive a 12% return on the capital used to acquire the property, with the remaining profits being split 75% to DEMK and 25% to Attias.

44.     They further agreed that title to such properties (the "Small Properties") would be held by AEM Investments, LLC ("AEM"), a company wholly owned by DEMK.

45.     Attias represented to DEMK that he intended to, and would, use the funds provided by DEMK to purchase properties at sheriff sales and auctions.

46.     Attias intended all along to siphon some of the funds provided by DEMK for his own use.

7

47.     In reliance upon Attias's representation DEMK wired $400,000 to Attias.

48.     Attias used $320,000 to purchase the Small Properties.

49.     However, Attias retained the remaining $80,000 and refused to return it to DEMK.

E.     **The 13th Street Properties.**

50.     Attias advised Kodsi that he owned 5824-5438 North 13th Street and 5840-5850 North 13th Street in Philadelphia (the "13th Street Properties"), which consisted of two virtually identical buildings in shell condition.

51.     Alain advised Attias that he controlled an entity, 532 Brooklyn, that was in need of such properties for a like kind exchange.

52.     Therefore, Attias entered into a joint venture agreement with 532 Brooklyn whereby Attias would sell the 13th Street Properties to 532 Brooklyn.

53.     Under the joint venture agreement, in exchange for title to the 13th Street Properties, 532 Brooklyn agreed to invest $3.8 million in capital for a joint venture developing the properties.

54.     On July 27, 2016, 532 Brooklyn and an entity that Attias controlled entered into a verbal agreement of sale for the 13th Street Properties (the "Agreement of Sale").

55.     Under the Agreement of Sale, 532 Brooklyn agreed to purchase the 13th Street Properties for $3,800,000 dollars.

56.     Under the joint venture agreement, $2,445,504.59 of the purchase price would be held in escrow and distributed to Attias according to a draw procedure ("Draw Procedure").

57.     The $2,445,504.59 was to be allocated to the construction of the properties.

58.    The remaining $1,322,405.05 of the purchase price would come in the form of a promissory note that would be held by Attias.

59.    Under the Agreement of Sale, Attias agreed to diligently and continually prosecute the work on the project in a good and workmanlike manner according to his plans, with time being of the essence.

60.    Under the Draw Procedure, Attias received $1,600,000 upon execution of the Agreement of Sale.

61.    Under the Draw Procedure, the remaining funds held in escrow would be released to Attias based on the work that he completed.

62.    Under the Draw Procedure, Attias agreed to fund any hard costs in excess of the Purchase Price necessary to complete the Project.

63.    Under the Agreement of Sale, Attias agreed to construction the two building on the 13th Street Properties according to the plans for the project that Attias had prepared.

64.    Accordingly, Attias agreed to develop the two buildings on the 13th Street Properties into two buildings with 40 units in each building.

65.    Attias and 523 Brooklyn agreed that, after the buildings were completed and sold, 532 Brooklyn would receive a 6% return on the $2.3 million purchase price and the remainder of the profits would be split 50% to 532 Brooklyn and 50% to Attias.

**F.    Unwinding of the Relationship Between Plaintiffs and Attias**

66.    In 2017, Plaintiffs learned that, among other things, Attias had titled properties in his name or in the names of entities he controlled and had not used capital to rehabilitate the properties.

67.    Accordingly, Plaintiffs demanded that Attias return their capital.

9

68.     Because Attias had spent the capital on thing other than the Properties, Attias was unable to return the capital that Plaintiffs invested.

69.     Therefore, on or about January 28, 2018, Kodsi, AEM, Brooklyn 532, and DEMK entered into a written agreement with Defendants and Lippincott Lofts, LLC entered to unwind the various joint ventures and to return capital to Plaintiffs (the "Unwinding Agreement").

70.     Under the Unwinding Agreement, Attias agreed to return the $350,000 in capital to Foster for the Unity Street Properties, and, in return, Kodsi, AEM, Brooklyn 532, and DEMK agreed to acknowledge that any interest or claim in Unity or Unity Street was released, satisfied or discharged.

71.     Attias has failed to return the $350,000 in capital to Foster.

72.     Under the Unwinding Agreement, Attias was required to finish the renovations of two of the 13th Street Properties, as part of a comprehensive agreement in which, among other things, Attias would ultimately receive ownership of one of the 13th Street Properties.

73.     Attias has failed to finish the renovations of the two specified 13th Street Properties as required by the Unwinding Agreement.

G.      **RICO Allegations**

74.     Each Plaintiff is a person as defined in 18 U.S.C. § 1961 (3) and 1964(c).

75.     Defendants and Lippincott Lofts, LLC are persons as defined in 18 U.S.C.§ 1961 (3) and 1964(c).

76.     At all material times, Attias, Unity, and Lippincott Lofts, LLC were associated in fact and thus an enterprise within the meaning of 18 U.S.C. § 1961(4) and 1962 (c).

10

77.     The purpose of the enterprise was to defraud Plaintiffs through falsely claiming that funds provided by Plaintiffs would be used to acquire and develop real property but instead were used for Defendants' personal enrichment.

78.     The enterprise utilized the facilities of interstate commerce including the United States mail and telephone lines.

79.     The enterprise operated as an ongoing organization separate and distinct from each Defendant.

80.     The enterprise has a pattern and structure separate and apart from the pattern of racketeering activity in which Defendants engage.

81.     Defendants participated in the ongoing operation and management of the enterprise itself.

82.     The objectives of Defendants' conspiracy were to defraud Plaintiffs and to enrich Attias.

83.     To accomplish the unlawful objective, Defendants have engaged in numerous acts of racketeering in violation of federal and state laws, including wire fraud, 18 U.S.C. § 1343 and violations of numerous state laws.

84.     To further their scheme to defraud Plaintiffs, Defendants intentionally misrepresented and fraudulently induced Plaintiffs when communicating with them by wire.

85.     Defendants' intentional misrepresentations and omissions include, but are not limited to, the following:

> a. In May 2016, Attias represented to Kodsi, as a representative of DEMK, that he intended to, and would, use the funds to purchase the Locust

11

Avenue Properties in the name of a limited liability company to be owned by both Attias and DEMK.

b. In July 2016, Attias misrepresented to Foster he intended to and would use the funds she provided to purchase title to the Lippincott Properties in Foster's name.

c. In December 2016, Attias misrepresented to Foster that he intended to, and would, use the funds to purchase Unity Street in Foster's name.

d. Attias misrepresented to DEMK that he intended to, and would, use the funds provided by DEMK to purchase properties at sheriff sales and auctions.

86. During all relevant times and in furtherance of and for the purpose of executing the scheme to defraud Plaintiff and others, Defendants transmitted, caused to be transmitted and received by interstate wire matter and things therefrom, including, but not limited to oral and electronic communications, contracts, letters, and correspondence.

87. Use of wire communications included, but was not limited, to the following:

a. On or about April 27, 2016 accepting and receiving a wire transfer from FOSTER of $200,000;

b. On or about June 20, 2016 accepting and receiving a wire transfer from DEMK in the mount of $400,000;

c. On or about August 3, 2016 accepting and receiving a wire transfer from FOSTER in the amount of $70,000;

d. On or about December 8, 2016, accepting and receiving a wire transfer from FOSTER in the amount of $350,000;

12

    e. On or about April 4, 2017, accepting and receiving a wire transfer from FOSTER in the amount of $360,000;

88.    Each use of wire communications in connection with the scheme to defraud constitutes the offense of wire fraud as prohibited by 18 U.S.C. § 1343.

89.    During all relevant times, in connection with all activities given rise to this action, Defendants conspired to engage in various activities and aided and abetted one another in said activities.

90.    During all relevant times, in connection with all activities given rise to this action, Defendants, Defendants acted with malice, intent, and knowledge.

## FIRST CAUSE OF ACTION
### Violation of RICO, 18 U.S.C. § 1962(c)
### (Foster and DEMK against Defendants)

91.    Plaintiffs incorporate by reference all preceding paragraphs.

92.    During the relevant times, each defendant was employed by or associated with the enterprise.

93.    Defendants devised and participated in a conspiracy to defraud Foster and DEMK and to induce them to invest capital in non-existing real estate development projects.

94.    Each defendant conducted or participated directly or indirectly in the conduct of the enterprises affairs through a pattern of racketeering activity consisting of multiple violations of 18 U.S.C. § 1343, as more particularly described above.

95.    Defendants' activities in violation of 18 U.S.C. § 1343 were both related and continuous, thereby constituting a pattern of racketeering activity with the meaning of 18 U.S.C. § 1961(5).

96.     The conduct of each of the Defendants constitutes a violation of 18 U.S.C. § 1962(c).

97.     Foster and DEMK were directly injured in their business and property by Defendants' violations of 18 U.S.C. § 1962(c).

WHEREFORE, Foster and DEMK demand judgment in their favor and against Defendants awarding Plaintiffs in excess of $3,000,0000 in damages, treble damages, attorneys' fees, cost of suit, and any other appropriate relief.

### SECOND CAUSE OF ACTION
### Violation of RICO, 18 U.S.C. § 1962(d)
### (Foster and DEMK against Defendants)

98.     Plaintiffs incorporate by reference all preceding paragraphs.

99.     During all relevant times, each defendant was employed by or associated with the enterprise.

100.    Defendants conspired and agreed among themselves and with other co-conspirators to violate 18 U.S.C. § 1962(c), that is, to conduct or participate directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity.

101.    Defendants' conduct violates 18 U.S.C. § 1962(d)

102.    Foster and DEMK were injured in their business or property by Defendants' violation of 18 U.S.C. § 1962(d).

WHEREFORE, Foster and DEMK demand judgment in their favor and against Defendants awarding Plaintiffs in excess of $3,000,0000 in damages, treble damages, attorneys' fees, cost of suit, and any other appropriate relief.

### THIRD CAUSE OF ACTION
### Common Law Fraud
### (Foster and DEMK against Defendants)

14

103.   Plaintiffs incorporate by reference all preceding paragraphs.

104.   Defendants made intentional material misrepresentations to Foster and DEMK.

105.   Defendants intended that Foster and DEMK would rely upon and be induced to act by such intentional misrepresentations and omissions.

106.   Foster and DEMK justifiably relied upon on the fraudulent misrepresentations and omissions of Defendants.

107.   As a result of Defendants' intentional misrepresentations, intentional false impressions, and intentional omissions of fact, Foster and DEMK have been damaged.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants awarding Plaintiffs in excess of $3,000,000 in damages, attorneys' fees, cost of suit, and any other appropriate relief.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Foster and DEMK against Attias)

108.   Plaintiffs incorporate by reference all preceding paragraphs.

109.   Attias acted as the agent of DEMK and Foster.

110.   As an agent, Attias owed them a fiduciary duty.

111.   Pursuant to this duty, Attias was required to act in good faith and in the best interests of DEMK and Foster.

112.   Pursuant this duty, Attias was required to act solely for the benefit of DEMK and Foster on all matter connected to the agency.

113.   Attias breached this duty by acquiring property for himself and for entities in which he held ownership interests, rather than on behalf of DEMK and Foster and by placing his personal interests before those of DEMK and·Foster.

15

114.   As a result of Attias's breach of fiduciary duty, Foster and DEMK suffered damages.

WHEREFORE, Foster and DEMK demand judgment in their favor and against Attias awarding Plaintiffs in excess of $3,000,000 in damages, attorneys' fees, cost of suit, and any other appropriate relief.

### FIFTH CAUSE OF ACTION
### Aiding and Abetting Breach of Fiduciary Duty
### (Foster against Unity)

115.   Plaintiffs incorporate by reference all preceding paragraphs.

116.   Attias acted as the agent of Foster.

117.   As an agent, Attias owed Foster a fiduciary duty.

118.   Pursuant to this duty, Attias was required to act in good faith and in the best interests of Foster.

119.   Pursuant this duty, Attias was required to act solely for the benefit of Foster on all matter connected to the agency.

120.   Attias breached this duty by acquiring Unity Street in the name of Unity, rather than in Foster's name.

121.   Unity knowingly participated in this breach of fiduciary duty.

122.   As a result of Unity's participation in the breach of fiduciary duty, Foster suffered damages.

WHEREFORE, Foster demands judgment in her favor and against Unity awarding Plaintiffs in excess of $1,000,000 in damages, attorneys' fees, cost of suit, and any other appropriate relief.

### SIXTH CAUSE OF ACTION
### Breach of Contract

16

**(532 Brooklyn against Attias)**

123.    Plaintiffs incorporate by reference all preceding paragraphs.

124.    In the Unwinding Agreement, Attias agreed to finish the renovations of the 13th Street Properties, which are owned by 532 Brooklyn.

125.    Attias has failed to finish the renovations of the 13th Street Properties.

126.    Attias has thereby breached his contract with 532 Brooklyn.

127.    As a result of Attias's breach, 532 Brooklyn has suffered damages.

WHEREFORE, 532 Brooklyn demands judgment in its favor and against Attias awarding Plaintiffs in excess of $1,000,000 in damages, attorneys' fees, cost of suit, and any other appropriate relief.

## SEVENTH CAUSE OF ACTION
### Breach of Contract
### (Foster against Attias)

128.    Plaintiffs incorporate by reference all preceding paragraphs.

129.    Under the Unwinding Agreement, Attias agreed to pay Foster $350,000.

130.    Attias has failed to pay Foster $350,000.

131.    As a result of Attias's breach, Plaintiffs have suffered damages.

WHEREFORE, Foster demands judgment in their favor and against Attias awarding Plaintiffs at least $350,000 in damages, attorneys' fees, cost of suit, and any other appropriate relief.

ZIMOLONG, LLC.

**DATED**: November 1, 2018

By:*/s/ Walter S. Zimolong, Esquire*
Walter S. Zimolong, Esquire
wally@zimolonglaw.com

17

P.O. Box 552
Villanova, PA 19085
Tele: 215-665-0842
Attorneys for Plaintiffs