IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

RACHEL FOSTER, ET AL.,

        Plaintiffs,

v.

MOSHE ATTIAS, ET AL.,

        Defendants.

: CIVIL ACTION
:
: No. 18-4853

---

Goldberg, J.                                                                    December 11, 2019

## MEMORANDUM

Plaintiffs Rachel Foster, 532 Brooklyn, LLC ("532 Brooklyn"), and DEMK, LLC ("DEMK") (collectively, "Plaintiffs") have brought suit against Defendants Moshe Attias and Unity Loft, LLC ("Unity") alleging liability arising out of a series of failed real estate development transactions among the parties. Plaintiffs set forth federal claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, as well as state law claims for fraud, breach of fiduciary duty, and breach of contract. Defendants have filed the current Motion to Dismiss the RICO causes of action, which, for the following reasons, will be denied.

### I. FACTS IN THE AMENDED COMPLAINT

The following facts are taken from Plaintiff's Amended Complaint:[1]

---

[1] In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

In February 2015, Defendant Attias, acting as general contractor for a construction project on a Philadelphia property, became acquainted with Plaintiff Foster's husband, Alain Kodsi ("Kodsi"). (Am. Compl. ¶¶ 14–16.) Attias explained that he owned or could acquire several parcels of real property that could be rehabilitated or developed for a profit, if Kodsi could provide the necessary capital. (Id. ¶ 17.) Kodsi advised that his wife, Foster, and Plaintiff DEMK (a limited liability company owned by Kodsi and/or Foster) would be able to provide the capital for the properties. (Id. ¶ 18.) Accordingly, Attias, DEMK, and Foster, entered into a verbal agreement whereby DEMK and Foster would provide Attias with the capital necessary to acquire, rehabilitate, and/or develop properties in exchange for DEMK's and Foster's receipt of a percentage return on their capital and at least fifty percent of the profits (the "Agreement").

Pursuant to the Agreement, the following properties were acquired: (a) 1328–34 Unity Street Philadelphia, PA ("Unity Street"); (b) 2016 2024–34 West Lippincot Street and 3101–19 North 21st Street (the "Lippincott Street Property"); (c) 704–718, 720 Locust Avenue, Philadelphia, PA (the "Locust Avenue Properties"); and (d) 2230 East Clearfield Street, 2051 North 9th Street, 749 Locust Avenue, 15 North Rittenhouse Street, 35 North Peach Street, 117 North 57th Street, 60 Manheim Street, and 1109 State Street, Philadelphia, PA (the "Small Properties"). (Id. ¶ 20.)

### A. Unity Street

In December 2016, Foster agreed to provide Attis with $350,000 in capital to acquire and develop Unity Street. Foster and Attias further agreed that Unity Street would be titled in Foster's name and she would receive a 12% return on her capital, plus 50% of the profits upon sale of Unity Street. Attias represented to Foster, through Kodsi, that he would use the funds to purchase the property in Foster's name. Foster later learned that Attias acquired Unity Street in the name of

Defendant Unity, which Attias solely owns and controls. Plaintiffs allege that Attias has taken no action to develop Unity Street and refuses to repay Foster. (Id. ¶¶ 21–27.)

### B. The Lippincott Properties

In July 2016, Attias and Foster agreed that Foster would provide Attias with $365,000 in capital for the acquisition and development of the Lippincott Properties. Attias represented that he intended to use the funds to purchase title to the Lippincott Properties in Foster's name and that she would receive a 12% return on her capital, plus 50% of the profits upon the sale of the Properties. In reliance on Attias's representation, Foster provided him with $365,000. Subsequently, Foster learned that Attias acquired the Lippincott Properties in the name of an entity called Lippincott Lofts, LLC, which Attias solely owns, and that Attias failed to develop the Lippincott Properties. (Id. ¶¶ 28–34.)

### C. The Locust Avenue Properties

In May 2016, Attias advised Kodsi that he could acquire the Locust Avenue Properties for development, and DEMK agreed to provide $200,000 in capital for their acquisition and development. Attias represented to Kodsi, as a representative of DEMK, that he would use the funds to purchase the Locust Avenue Properties in the name of a limited liability company to be owned by both Attias and DEMK. In reliance on this representation, DEMK provided $200,000 to Attias. Thereafter, DEMK learned that Attias had acquired the Locust Avenue Properties in his own name and had taken no action to develop the properties. (Id. ¶¶ 35–40.)

### D. The Small Properties

Attias represented to Kodsi that he was skilled at selecting and acquiring properties at sheriff sales and auctions. Accordingly, DEMK agreed to provide $400,000 to Attias for the acquisition of suitable properties. Attias and DEMK further agreed that DEMK would receive a

12% return on the capital, with the remaining profits being split 75% to DEMK and 25% to Attias, and that title to the properties (the "Small Properties") would be held by AEM Investments, LLC ("AEM"), a company wholly-owned by DEMK. Attias claimed to have used $320,000 to purchase and rehabilitate the Small Properties, but has refused to return the remaining $80,000 and has not provided an accounting. In addition, Attias has collected rent from tenants without providing that income to DEMK. In unwinding these transactions, Attias corrected title issues on all of the Small Properties, except for 749 Locust Avenue, which he continues to own in his own name using proceeds received from DEMK. (Id. ¶¶ 41–50.)

### E. The 13th Street Properties

Attias advised Kodsi that he owned 5824–5438 North 13th Street and 5840–5850 North 13th Street in Philadelphia (the "13th Street Properties"), which consisted of two virtually identical buildings in shell condition. Kodsi advised Attias that he controlled an entity, 532 Brooklyn, that was in need of such properties for a like kind exchange. Thus, Attias entered into a joint venture agreement with 532 Brooklyn, whereby Attias would sell the 13th Street Properties to 532 Brooklyn. Under this agreement, 532 Brooklyn agreed to invest $3.8 million in capital for a joint venture in developing the 13th Street Properties, in exchange for title to such properties.

On July 27, 2016, 532 Brooklyn and another entity controlled by Attias entered into a verbal agreement for sale of the 13th Street Properties (the "Agreement of Sale"). Under the Agreement of Sale, 532 Brooklyn agreed to purchase the 13th Street Properties for $3,800,000. $2,2445,504.59 of the purchase price was allocated as follows: $600,000 to the cost of land, and $1,845,504.59 for the construction of the properties. The remainder of the purchase price would come in the form of a promissory note that would be held by Attias. In turn, Attias agreed to diligently pursue work on the project and commit to completing it within eighteen months,

developing the two buildings on the 13th Street Properties into two buildings with at least forty units in each building.

Attias and 532 Brooklyn agreed that, after the buildings were completed and sold, 532 Brooklyn would receive a 6% return on its capital for the first 18 months and 12% return after the first 18 months on the $2.3 million funded purchase price, with the remainder of profits split evenly between Attias and 532 Brooklyn. Attias, however, told Plaintiffs and several other individuals that he used the funds entrusted to him to purchase a mansion in Atlantic City, NJ. (Id. ¶¶ 51–66.)

### F. Unwinding of the Relationship

In 2017, Plaintiffs learned that Attias had titled properties in his name or in the names of entities he controlled, and had not used capital to rehabilitate the properties. Accordingly, Plaintiffs demanded that Attias either return their capital and/or complete the work, but because Attias had spent the capital on other things, he was unable to do so.

On January 28, 2018, Kodsi, AEM, 532 Brooklyn, and DEMK entered into a written agreement with Defendants and Lippincott Lofts, LLC to unwind the various joint ventures and return capital to Plaintiffs (the "Unwinding Agreement"). Under this Unwinding Agreement, Attias agreed to return the $350,000 in capital to Foster for the Unity Street Properties and, in exchange, DEMK agreed to acknowledge that any interest or claim in Unity or Unity Street was released, satisfied, and/or discharged. Attias, however, failed to return the $350,000 to Foster.

Also under the Unwinding Agreement, Attias was required to finish the renovations at one of the 13th Street Properties, as part of a more comprehensive agreement. Attias failed to even begin any of the renovations at the 13th Street Properties and abandoned the properties in a dangerous state. (Id. ¶¶ 67–74.)

5

## II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on November 5, 2018. They filed an Amended Complaint on April 9, 2019, setting forth the following claims: (1) violation of RICO, 18 U.S.C. § 1962(c), against Defendant Attias; (2) RICO conspiracy, 18 U.S.C. § 1962(d), against Defendant Attias; (3) common law fraud against all Defendants; (4) breach of fiduciary duty against Attias; (5) aiding and abetting a breach of fiduciary duty against Defendant Unity; (6) breach of contract by Plaintiff 532 Brooklyn against Defendant Attias; and (7) breach of contract by Plaintiff Foster against Defendant Attias.

On May 28, 2019, Defendants filed a Motion to Dismiss Plaintiffs' RICO claims.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements that a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

## IV. DISCUSSION

Defendants' Motion seeks dismissal of Plaintiffs' RICO claims under 18 U.S.C. §§ 1962(c) and (d) (Counts I and II).

Section 1962(c) of RICO provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

18 U.S.C. § 1962(c). To state a claim under § 1962(c), Plaintiffs must allege that a "person" employed by or associated with an enterprise engaged in the following: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 364 (3d Cir. 2003) (quoting Sedima. S.P.R.L v. Imrex Co., 473 U.S. 479, 496 (1985)).

7

Defendants assert that Plaintiffs have not sufficiently plead all of these elements because Defendants did not act through a RICO enterprise, and there is no pattern of racketeering activity underlying Plaintiffs' claims. I will address each argument separately.

**A. <u>RICO Enterprise</u>**

RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A corporation can qualify as a "person" for RICO purposes if that corporation has conducted an enterprise's affairs through a pattern of racketeering activity. <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1412 (3d Cir. 1993); <u>United States v. Philip Morris USA, Inc.</u>, 566 F.3d 1095, 1110 (D.C. Cir. 2009).

An "'[e]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is well-settled that an "association-in-fact" enterprise may consist of a corporation together with non-employee individuals. <u>Levine v. First Am. Title Ins. Co.</u>, 682 F. Supp. 2d 442, 456 (E.D. Pa. 2010); <u>Crown Cork & Seal Co. Inc. v. Ascah</u>, No. 93–2933, 1994 WL 57217, *4 (E.D. Pa. Feb. 18, 1994). Moreover, a RICO enterprise "may be comprised only of defendants, or of defendants and non-defendants." <u>United States v. Urban</u>, 404 F.3d 754, 782 (3d Cir. 2005).

In determining whether a plaintiff has adequately alleged activity by both a "person" and an "enterprise," the United States Supreme Court has applied a "distinctness" principle, explaining:

> While accepting the "distinctness" principle, we nonetheless disagree with the appellate court's application of that principle to the present circumstances—circumstances in which a corporate employee, "acting within the scope of his authority," . . . allegedly conducts the corporation's affairs in a RICO-forbidden way. The corporate owner/employee, a natural person, is distinct from the

8

> corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more "separateness" than that. . .
>
> Linguistically speaking, an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any "person" unlawfully to conduct an "enterprise," particularly when the statute explicitly defines "person" to include "any individual . . . capable of holding a legal or beneficial interest in property," and defines "enterprise" to include a "corporation." 18 U.S.C. §§ 1961(3), (4). And, linguistically speaking, the employee and the corporation are different "persons," even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs. . . .

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).

Consistent with Cedric Kushner, the United States Court of Appeals for the Third Circuit has applied a distinctiveness requirement whereby "the 'person' subject to liability cannot be the same entity as the 'enterprise.'" Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc., 46 F.3d 258, 262 (3d Cir. 1995) (quoting Hirsch v. Enright Refining Co., 751 F.2d 628, 633 (3d Cir. 1984)). The Third Circuit has similarly interpreted the distinctiveness requirement as meaning that although "a claim simply against one corporation as both 'person' and 'enterprise' is not sufficient," a complaint "alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement." Id. at 268; see also MacCauley v. Estate of Nicholas, 7 F. Supp. 3d 468, 481–82 (E.D. Pa. 2014) ("Thus, a plaintiff can bring a civil RICO claim against an owner who conducts her company's affairs in a way forbidden by RICO, but cannot allege RICO claims against a company, its employees and its agents for the same conduct where the company is the enterprise and violates RICO through its employees and agents."). "The only important thing is that [the enterprise] be either formally (as when there is incorporation) or

practically (as when there are other people besides the proprietor working in the organization) separable from the individual." Jaguar Cars, 46 F.3d at 269 (quoting McCullough v. Suter, 757 F.2d 142, 144 (7th Cir. 1985)).

Here, the Amended Complaint plausibly pleads both a "person" and a distinct "enterprise." The RICO cause of action has been brought against Defendant Attias as a "person" within the meaning of 18 U.S.C. § 1961(3) and § 1964(c). (Am. Compl. ¶¶ 77, 80.) The "enterprise" is an association-in-fact consisting of Attias together with the separate legal entities of which he is the owner, including Unity Loft, LLC and Lippincott Lofts, LLC. (Id. ¶ 80.) The Amended Complaint goes on to contend that the enterprise, "an association in fact of an individual and legal entities, has a structure separate and apart from the pattern of racketeering activity in which Defendant engaged." (Id. ¶ 81.) Finally, the Amended Complaint asserts that "members and associates of the Enterprise, an association in fact enterprise, functioned together as a continuing unit, with a common purpose for the economic benefit and gain of the RICO Defendant Attias." (Id. ¶ 82.) At this stage of the litigation, these allegations plausibly plead RICO's second element of enterprise.

Defendants urge that these allegations are insufficient because the Amended Complaint does not identify acts engaged in by Defendant Unity or any non-parties towards a common purpose. They assert that Defendant Unity and non-party Lippincott Lofts, LLC "were each only involved in one of the many transactions in dispute and therefore can neither be part of the RICO enterprise nor can they have engaged in a pattern of racketeering activity." (Defs.' Mem. Supp. Mot. To Dismiss 9.) Without citation to any authority, Defendants contend that absent allegations that each of the members of the enterprise participated in each of the challenged transactions, no RICO enterprise exists.

The United States Supreme Court has rejected this argument and declined to impose such rigid requirements on a RICO enterprise. In Boyle v. United States, 556 U.S. 938 (2009), the Supreme Court noted that an association-in-fact enterprise "need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times." Id. at 948. "[T]here is no need for a plaintiff to prove that each conspirator had contact with all other members." Schwartz v. Title Ins. Co., 970 F. Supp. 2d 395, 404 (E.D. Pa. 2013). Rather, "[s]o long as the alleged RICO co-conspirators have agreed to participate in the affairs of the same enterprise, the mere fact that they do not conspire directly with each other 'does not convert the single agreement to conduct the affairs of an enterprise through a pattern of racketeering activity into multiple conspiracies.'" United States v. Friedman, 854 F.2d 535, 562–63 (2d Cir. 1988) (quotation omitted); see also United States v. Riccobene, 709 F.2d 214, 225 (3d Cir. 1983) ("It is well established that one conspirator need not know the identities of all his coconspirators, nor be aware of all the details of the conspiracy in order to be found to have agreed to participate in it.").

In compliance with these principles, the Amended Complaint alleges that the enterprise acted outside the normal affairs of a business relationship and "functioned for the purpose of defrauding Plaintiffs and enriching the Enterprise's members and associates through falsely claiming that funds provided by Plaintiffs would be used to acquire and develop real property but instead were used for Defendants' personal enrichment." (Am. Compl. ¶ 80.) In furtherance of this scheme, Plaintiff alleges that Defendant Attias used fraudulent communications to cause Plaintiffs to wire funds to Attias under the representation that the properties acquired with the funds would be placed in Plaintiff Foster's name, even though Attias actually used the funds to

11

purchase the properties in the name of enterprise members Unity and Lippincott Lots, LLC. (Id. ¶¶ 87–89.) Given that these allegations sufficiently plead both a "person" and a distinct RICO "enterprise," I decline to dismiss the RICO count on this ground.

### B. Pattern of Racketeering Activity

Alternatively, Defendants allege that the RICO claim cannot survive because Plaintiffs do not sufficiently plead a pattern of racketeering activity underlying Plaintiffs' claims in this action.

Racketeering activity is defined in Section 1961(1) to include acts indictable under certain provisions of the federal crimes code. Mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 are included. See Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 803 (E.D. Pa. 2007). A pattern of racketeering activity requires at least two acts of racketeering. 18 U.S.C. § 1961(5). The two predicate acts necessary to establish a pattern must (1) occur within ten years of each other; (2) be "related," and (3) "amount to or pose a threat of continued criminal activity." United States v. Bergrin, 650 F.3d 257, 266–67 (3d Cir. 2011). "Relatedness" is demonstrated when racketeering predicates "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events." Macauley, 7 F. Supp. 3d at 483 (quoting Mega Concrete, Inc. v. Smith, No. 09-4234, 2013 WL 3716515, at *10 (E.D. Pa. July 15, 2013)). "Continuity" is "a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. (quoting H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989)).

Here, Plaintiffs allege predicate acts of racketeering activity involving fraud. Defendants now contend that, "[a]t most, Plaintiffs' factual averments infer only that one individual, Defendant Attias, allegedly made certain statements and received certain payments by wire

12

transfer. There is no fact asserted that any other individual or entity, including Defendant Unity, committed any predicate act, let alone the two predicate acts necessary to establish a pattern of racketeering activity." (Defs.' Mem. Supp. Mot. to Dismiss 7.) In turn, Defendants claim that the unilateral actions of only Defendant Attias cannot establish a pattern of racketeering activity.

Contrary to Defendants' argument, however, Plaintiffs need not allege that more than one individual or entity that is part of the enterprise committed a predicate act. Rather, RICO liability requires a showing that the *defendant* participated in the conduct or affairs of the enterprise "through a pattern of racketeering activity that must include the allegation of at least two racketeering acts." Stewart v. Assoc. Consumer Discount Co., 1 F. Supp. 2d 469, 474 (E.D. Pa. 1998). A "viable §1962(c) actions requires a claim against defendant 'persons' acting through a distinct 'enterprise,' [b]ut, alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement." Jaguar Cars, 46 F.3d at 268; see also Emcore Corp. v. Pricewaterhouse Coopers LLP, 102 F. Supp. 2d 237, 258 (D.N.J. 2000) ("In [the Third] [C]ircuit, a plaintiff can state a claim against individual defendants by alleging that they, though agents of a corporate enterprise, conducted racketeering acts in their private capacity and to their own benefit."). "[A] RICO enterprise 'may be comprised only of defendants and non-defendants.'" Coleman v. Commonwealth Land Title Ins. Co., 684 F. Supp. 2d 595, 609 (E.D. Pa. 2010) (quoting United States v. Urban, 404 F.3d 754, 782 (3d Cir. 2005)). Ultimately, however, the RICO defendant "must be the 'person' who conducts the 'enterprise's' affairs through a pattern of racketeering activity." Id. at 610.

Here, the RICO cause of action is brought only against Attias as a "person" acting through an "enterprise" that includes non-RICO Defendant Unity and non-party Lippincott Lots, LLC. As such, it is only Attias, as the sole RICO Defendant, who must commit the predicate acts and

13

conduct the enterprise's affairs through a pattern of racketeering. According to the Amended Complaint, Defendant Attias satisfied this requirement by using multiple interstate wires to defraud Plaintiffs of millions of dollars, all of which were done close in time, were related, and occurred over a substantial period of time (from April 2016 through January 2018). (Am. Compl. ¶¶ 87–92.) Defendants have not cited any authority for the proposition that all members of the enterprise—whether or not defendants in the RICO claim—must commit at least two predicate acts. Accordingly, I will deny Defendants' Motion on this ground as well.

## V. CONCLUSION

Taking the allegations in the Amended Complaint as true, I find that Plaintiffs have plausibly pleaded a RICO claim against Defendant Attias. The Amended Complaint alleges a pattern of racketeering activity conducted by Attias through an enterprise of various LLCs, used to siphon money from Plaintiffs through various real estate transactions. At this juncture of the litigation, such allegations give rise to an actionable claim for relief under RICO. Accordingly, I will deny the Motion to Dismiss.