# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL FOSTER, <u>ET</u> <u>AL.</u>, <br><br> **Plaintiffs,** <br><br> v. <br><br> MOSHE ATTIAS, <u>ET AL.</u>, <br><br> **Defendants.** | CIVIL ACTION <br><br> No. 18-4853 |
| MOSHE ATTIAS and MARION COURT, LLC, <br><br> **Plaintiffs,** <br><br> v. <br><br> 532 BROOKLYN, LLC and ALAIN KODSI, <br><br> **Defendants.** | CIVIL ACTION <br><br> NO. 19-866 |

**Goldberg, J.**                                                                                                  **September 9, 2020**

### MEMORANDUM

This case involves multiple intertwined disputes regarding failed real estate transactions in and around Philadelphia, Pennsylvania. In November 2018, Plaintiffs in this action, Rachel Foster, 532 Brooklyn, LLC, and DEMK, LLC (collectively, the "Foster Parties"), brought suit against Moshe Attias and Unity Loft, LLC (collectively, the "Attias Parties") alleging liability arising out of five of these transactions (the "<u>Foster</u> Action"). Thereafter, on February 15, 2019, Moshe Attias and his wholly-owned limited-liability company, Marion Court, LLC, filed suit in state court against 532 Brooklyn and Alain Kodsi (who is Rachel Foster's husband), alleging liability arising out of one of the above transactions and one additional real estate transaction (the "<u>Attias</u> Action").

Following removal of the Attias Action to federal court, both the Foster and Attias Actions were administratively consolidated.

The Attias Parties, in the Foster Action, then filed a Counterclaim and Amended Counterclaim against the Foster Parties on grounds of fraudulent transfer, unjust enrichment, and fraud. The Foster Parties have moved to dismiss the Attias Parties' Counterclaims. For the following reasons, this Motion will be granted in part and denied in part.[1]

I. **FACTUAL BACKGROUND**

In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the operative pleading as true, construe the allegations in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010). Here, aside from reciting the causes of actions, the Amended Counterclaim does not provide a separate statement of facts. Rather, the Amended Complaint appears to rely on the facts as pled in the related pleadings in these consolidated actions. For this reason alone, I could grant the motion to dismiss because "[a] viable counterclaim must set out enough facts to support a claim to relief that is plausible on its face." Dominion Retail, Inc. v. Rogers, No. 11-0233, 2012 WL 2405254, at *6 (W.D. Pa. May 22, 2012).

Nonetheless, for purposes of understanding the nature of the dispute and claims at issue, I recite the facts as set forth in the Amended Complaint in the Foster action, the Amended Complaint in the Attias Action, and the Amended Counterclaim Complaint in the Foster Action.

---

[1] On August 26, 2020—over five months after filing the original Motion—the Foster Parties filed a reply in support of their Motion to Dismiss, along with 236 pages of exhibits, requesting that the Motion to Dismiss be converted into a motion for summary judgment. The Foster Parties failed to seek leave of Court before filing this brief, in direct contravention of my Policies and Procedures. Thereafter, the Attias Parties submitted a response to that reply. I decline to consider either submission.

### A.  **Facts in the Amended Complaint in the *Foster* Action**

In February 2015, Attias, acting as general contractor for a construction project on a Philadelphia property, became acquainted with Foster's husband, Alain Kodsi ("Kodsi"). Attias explained to Kodsi that he owned or could acquire several parcels of real property that could be rehabilitated or developed for a profit if Kodsi could provide the necessary capital. Kodsi responded that his wife and, through her, DEMK LLC, a limited liability company owned by Foster, would be able to provide the capital for the properties. Accordingly, Attias, DEMK, and Foster entered into a verbal agreement whereby DEMK and Foster would provide Attias with the capital necessary to acquire, rehabilitate, and/or develop properties in exchange for DEMK's and Foster's receipt of a percentage return on their capital and at least fifty percent of the profits (the "Agreement"). (Foster Action Am. Compl. ¶¶ 14–19.)

Pursuant to the Agreement, the following properties were acquired: (a) 1328–34 Unity Street Philadelphia, PA; (b) 2016 2024–34 West Lippincott Street and 3101–19 North 21st Street; (c) 704–718, 720 Locust Avenue, Philadelphia, PA; and (d) 2230 East Clearfield Street, 2051 North 9th Street, 749 Locust Avenue, 15 North Rittenhouse Street, 35 North Peach Street, 117 North 57th Street, 60 Manheim Street, and 1109 State Street, Philadelphia, PA. For each of these properties, Foster provided Attias with capital to acquire and develop the property. According to the Amended Complaint, however, Attias took no action to develop the properties and has kept all titles and proceeds in his own name. (Id. ¶¶ 20–50.)

Aside from the above properties, Attias told Kodsi that he owned 5824–5438 North 13th Street and 5840–5850 North 13th Street in Philadelphia (the "13th Street Property"), which consisted of two virtually identical buildings in shell condition. Kodsi advised Attias that he controlled an entity, 532 Brooklyn, that was in need of such properties for a like kind exchange. Thus, Attias and 532 Brooklyn entered into a joint venture agreement whereby Attias would sell the 13th Street

3

Property to 532 Brooklyn.  Under this agreement, 532 Brooklyn agreed to invest $3.8 million in capital for a joint venture in developing the 13th Street Property, in exchange for title to the Property.  In turn, Attias agreed to diligently pursue work on the project and commit to completing it within eighteen months.  Attias and 532 Brooklyn agreed that, after the buildings were completed and sold, 532 Brooklyn would receive a 6% return on its capital for the first 18 months and 12% return after the first 18 months on the $2.3 million funded purchase price, with the remainder of profits split evenly between Attias and 532 Brooklyn.  The Foster Parties, however, learned that, instead of renovating the 13th Street Property, Attias used the funds entrusted to him to purchase a mansion in Atlantic City, NJ.  (Id. ¶¶ 51–63.)

In 2017, the Foster Parties discovered that Attias had titled properties in his name or in the names of entities he controlled and had not used capital to rehabilitate the properties.  Accordingly, the Foster Parties demanded that Attias either return their capital and/or complete the work, but because Attias had spent the capital on other things, he was unable to do so.  (Id. ¶¶ 67–74.)

The Foster Parties commenced the Foster action on November 5, 2018.  They filed an Amended Complaint on April 9, 2019, setting forth the following claims: (1) violation of RICO, 18 U.S.C. § 1962(c), against Attias; (2) RICO conspiracy, 18 U.S.C. § 1962(d), against Attias; (3) common law fraud against all of the Attias Parties; (4) breach of fiduciary duty against Attias; (5) aiding and abetting a breach of fiduciary duty against Unity; (6) breach of contract by 532 Brooklyn against Attias; and (7) breach of contract by Foster against Attias.  The Foster Parties subsequently stipulated to dismissal of Counts Four and Five.

### B.     Facts in the Amended Complaint in the *Attias* Action

In July 2016, Attias was the sole member of Plaintiff Marion Court, LLC ("Marion Court"), which in turn was the sole owner of the 13th Street Property.  As noted above, the 13th Street Property

consisted of a lot with two buildings, one designated as Building 1 and the other as Building 2. (Attias Action Am. Compl. ¶¶ 12–14.)

In July 2016, Kodsi approached Attias for the purpose of conducting a § 1031 exchange. The two men agreed to jointly renovate Buildings 1 and 2 and convert said buildings into apartments under the following terms:

a. Attias, through Marion Court, would sell the 13th Street Property to 532 Brooklyn for $3.8 million.

b. The sale proceeds would be used to clear mortgages, liens, and past taxes on the 13th Street Property and to renovate Building 1.

c. Upon completion of the Building 1 renovations, 532 Brooklyn would transfer title to Building 1 to Kodsi.

d. The parties would then obtain construction financing in the amount of $1.2 million, using Building 1 as collateral, to renovate and complete construction of Building 2.

e. Upon payment of $250,000 by Attias, 532 Brooklyn would transfer title of Building 2 to Attias.

f. The parties would share certain profits derived from the construction and renovation of the 13th Street Property.

Attias was advised by Kodsi's attorney and friend, Howard Brickner, Esq., that the 13th Street Property had to be transferred into an entity owned solely by Kodsi so that Kodsi could apply proceeds from another real estate transaction in a 1031 exchange toward the development of the 13th Street Property. (Id. ¶¶ 17–18.)

A closing for the sale of the 13th Street Property took place on September 8, 2016, during which Attias executed a deed transferring ownership of the 13th Street Property to 532 Brooklyn in exchange for $3.8 million. The parties agreed that Kodsi and 532 Brooklyn would pay $2,330,669.50 of the purchase price at or near the closing and that the remaining portion of the purchase price, plus legal fees, would be paid on September 7, 2017. Payment of the remaining purchase price was secured by a promissory note. According to the Complaint, Kodsi and 532

Brooklyn have not paid any portion of the remaining purchase price to Attias or Marion Court. (Id. ¶¶16, 18, 19, 21–28.)

Between 2016 and 2017, Attias and Marion Court performed substantial renovations on Building 1. In 2017, however, Kodsi directed Attias to send all of his construction forces to another construction project, on which the parties were collaborating at the old West Philadelphia High School. This demand prevented Attias from completing construction and renovation work on the 13th Street Property. After February 9, 2018, Kodsi and 532 Brooklyn ceased making agreed-upon scheduled payments to Attias for the completion of Building 1. (Id. ¶ 29–32.)

Subsequently, on May 16, 2018, without Attias's or Marion Court's knowledge or consent, Kodsi and 532 Brooklyn sold the Property to 5824 N 13th Street LLC, which is an entity managed by Kodsi's friend and business partner Lael Shultz. According to the Complaint, the sale price for the 13th Street Property was millions of dollars below its fair market value. In conjunction with that sale, Kodsi and 5824 N 13th Street caused a mortgage in the amount of $8,000,000 to be placed on the 13th Street Property. Attias and Marion Court aver that Kodsi and 532 Brooklyn are now renovating the 13th Street Property with Shultz, to the exclusion of Attias, and have barred Attias from entering the 13th Street Property to retrieve his equipment. (Id. ¶¶ 33–35.)

On February 15, 2019, Attias and Marion Court brought the Attias Action against Kodsi and 532 Brooklyn. That action alleges claims for breach of contract, breach of the promissory note, fraudulent transfer, unjust enrichment, fraud, and conversion.[2]

---

[2] The Amended Complaint in the Attias Action sets forth additional claims relating to another set of transactions involving the "WPHL Properties." As these claims are not relevant to Motion before me, I will not discuss the related allegations.

### C. **Facts in the Amended Counterclaim in the *Foster* Action**

The Attias Parties' Amended Counterclaim in the Foster Action does not set forth a separate statement of facts but appears to rely solely on the facts set forth in the Amended Complaint in the Attias Action.[3]

According to the limited allegations in the Amended Counterclaim, the Attias Parties assert that, at all material times, the Foster Parties owned and/or controlled the 13th Street Property. The Foster Parties then transferred or permitted the transfer of title to the 13th Street Property to Alain Kodsi's business partner for an amount far below fair market value. The Foster Parties also caused the imposition of an $8 million mortgage lien to be placed on the 13th Street Property. In return, the Foster Parties received direct monetary benefit from the proceeds of the mortgage loan. The Attias Parties now allege that the transfer of title to and $8 million mortgage on the 13th Street Property constitute a fraudulent transfer of equity. (Foster Action Am. Countercl. ¶¶ 3–7.)

The Attias Parties also assert that the Foster Parties have been unjustly enriched by "the wrongful transfer of title to the 13th Street Property, wrongful receipt of Mortgage proceeds and refusal to transfer title of Building 1 to Attias," as well as by "[the Foster Parties'] retention of title [to] certain of the Philadelphia Properties and [the Foster Parties'] refusal to allow Attias to develop the Philadelphia Properties." (Id. ¶¶ 13–17.)

---

[3] The Attias Parties' Response in opposition to the Motion to Dismiss also sets forth numerous additional facts based on exhibits attached to their brief. As a general rule, a district court reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "may not consider matters extraneous to the pleadings" without converting the motion into one for summary judgment. In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). The rule has three exceptions that permit courts to consider: (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).
   None of the documents attached to Attias Parties' Response fall within any of the enumerated exceptions. Accordingly, I decline to consider them here.

Finally, the Attias Parties contend that the Foster Parties made misrepresentations regarding the purpose and nature of the transaction and fraudulently induced the Attias Parties to sell the 13th Street Property to the Foster Parties. Specifically, the Attias Parties allege that the Foster Parties (a) falsely represented that they intended to renovate the 13th Street Property, (b) fraudulently concealed the wrongful sale of the 13th Street Property to Alain Kodsi's business partner, (c) falsely represented that they intended to proceed as agreed with respect to the Philadelphia Properties, and (d) wrongfully converted the Attias Parties' construction equipment for their own use. (Id. ¶¶ 18–26.)

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party moving to dismiss a counterclaim bears the burden of demonstrating that the counterclaim does not state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements that a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and

thus not entitled to the assumption of truth." Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

### A. Fraudulent Transfer Claim

The Attias Parties' first Counterclaim alleges "fraudulent transfer" based on the sale of and imposition of mortgage on the 13th Street Property.  Pennsylvania law provides no common law cause of action for "fraudulent transfer," and the Attias Parties fail to specify any clear legal basis for this claim.  The Pennsylvania Uniform Voidable Transactions Act, 12 P.S. § 5101, et seq. (the "Act") does allow creditors to void certain transfers of assets made by a debtor.

Assuming that the Attias Parties premise their "fraudulent transfer" claim on this Act, the statute provides that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa. Cons. Stat. § 5104(a).  The Act defines an "[a]sset" as the "[p]roperty of a debtor."  Id. § 5101(b).  A "[t]ransfer" is "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset."  Id.

9

Given these definitions, the issue here is whether the Attias Parties adequately plead that any of the Foster Parties had an ownership interest in the 13th Street Property, such that it was an "asset" for purposes of a "transfer" under the Act. As to 532 Brooklyn, the Attias Action Amended Complaint explicitly pleads that 532 Brooklyn had an ownership interest in the 13th Street Property. (Attias Action Am. Compl. ¶ 22.) Accordingly, the fraudulent transfer claim has been plausibly pled against 532 Brooklyn.

As to Foster and DEMK, however, none of the operative pleadings allow for any inference that Foster and DEMK had any ownership interest in the 13th Street Property, such that the Property was an "asset." By the Attias Parties' own admissions, the 13th Street Property was originally owned by Marion Court LLC, which was wholly owned by Attias, who is not a party to the Foster case. (Am. Answer ¶ 51; Attias Action Am. Compl, ¶¶ 9a, 13.) In July 2016, Marion Court then sold the 13th Street Property to 532 Brooklyn, owned solely by Kodsi. (Attias Action Am. Compl, ¶¶ 9d, 17, 19.) 532 Brooklyn then sold the 13th Street Property to Lael Shultz. (Id. ¶ 33.) As the Attias Parties expressly concede, neither Foster nor DEMK were the owner of the 13th Street Property when it was allegedly fraudulently transferred to Mr. Shultz. (Defs.' Opp'n Mot. to Dismiss 7.) Given this admission, a fraudulent transfer claim against Foster and DEMK cannot survive.

In an effort to resuscitate their fraudulent transfer claim against Foster and DEMK, the Attias Parties posit liability under two theories: (1) the participation theory, and (2) the alter ego doctrine. The Amended Counterclaim, however, does not plead facts sufficient to invoke either doctrine.

Under Pennsylvania's participation theory, a corporate officer may be held liable for the torts he personally commits or participates in while acting as an agent of the corporate entity. See e.g. Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978); Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983). "The participation theory of liability is not a cause of action in and of itself, but rather a form of derivative liability." In re Eastern Continuous Forms, Inc., 302

10

B.R. 320, 343 (E.D. Pa. 2003). To plead participation liability, a complaint must allege (1) the existence of tortious conduct and (2) knowing participation in or personal direction of the tortious conduct by the defendant." Streamline Business Group, LLC v. Vidible, Inc., No. 14-1433, 2016 WL 3523033, at *4 (E.D. Pa. June 27, 2016).

The allegations of the Amended Counterclaim fail to satisfy either element. First, despite the fact that "a tort claim is necessary to maintain a claim under the participation theory." KT.TV, LLC v. Entest Biomed., Inc., No. 11-244, 2011 WL 5374515, at *7 (M.D. Pa. Nov. 7, 2011), the fraudulent transfer claim here sounds only in statute. Second, the Amended Counterclaim does not allege that either Foster or DEMK is a corporate officer or employee of 532 Brooklyn—which is the entity that allegedly fraudulently transferred the 13th Street Property—such that they could have personally participated in the tort as 532 Brooklyn's agent.

The Attias Parties' invocation of alter ego liability is likewise unavailing. Alter ego liability for control persons is not the same as a tort participation theory of liability. Sugartown Worldwide LLC v. Shanks, 129 F. Supp. 3d 201, 206 (E.D. Pa. 2015). The alter ego theory comes into play in piercing the corporate veil when one seeks to hold liable an individual owner who controls the corporation. Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 333 n.7 (3d Cir. 2000); Lozosky v. Keystone Business Prods., Inc., No. 13-512, 2015 WL 4727073, at *4 (M.D. Pa. Aug. 10, 2015). It does not apply to a non-owner officer of a corporation. Lozosky, 2015 WL 4727073, at * 4. Factors to be considered in piercing the corporate veil include: (1) gross undercapitalization, (2) failure to observe corporate formalities, (3) substantial mingling of corporate and personal affairs, and (4) using the corporate form to perpetrate a fraud. Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp., 643 F. Supp. 2d 675, 695 (E.D. Pa. 2009). "Although veil-piercing is not a separate cause of action, but rather a basis for a cause of action against particular individuals, on a motion to dismiss . . ., a court 'must examine . . . whether the

11

facts pleaded . . . state a cause of action on a theory of piercing the corporate veil.'" Accurso v. Infra-Red Servs., Inc., 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014) (quoting Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)). Even under a notice pleading standard, "averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions" and cannot support a veil-piercing claim." Cent. Transp., LLC v. Atlas Towing, Inc., 884 F. Supp. 2d 207, 217 (E.D. Pa. 2012) (quoting Shenango Inc. v. Am. Coal Sales Co., No. 06–149, 2007 WL 2310869, at *4 (W.D. Pa. Aug. 9, 2007)).

Here, neither the Foster Action Amended Counterclaim nor the Attias Action Amended Complaint mentions an alter ego theory or sets forth any facts on which I can infer that either Foster or DEMK is the alter ego of 532 Brooklyn and/or Kodsi. The Attias Parties' belated invocation of the alter ego theory in response to a motion to dismiss cannot remedy the missing allegations in the Amended Counterclaim.

Accordingly, I will dismiss the Attias Parties' counterclaim for fraudulent transfer against Foster and DEMK but will deny the Motion to Dismiss this claim as against 532 Brooklyn.

**B.     Unjust Enrichment**

The Attias Parties' second Counterclaim alleges unjust enrichment. An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law. Sevast v. Kakouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007). A plaintiff who claims unjust enrichment must "'show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.'" Bair v. Purcell, 500 F. Supp. 2d 468, 495 (M.D. Pa. 2007) (quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987)). Under Pennsylvania law, a party seeking to recover under an unjust enrichment theory must show: (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such a benefit by the

12

defendant; and (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value. Global Ground Support, LLC v. Glazer Enter., Inc., 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008).

It is well-established that where an express or implicit contract governs the relationship or fixes the value of the services at issue, no recovery may be had under an unjust enrichment theory. Hershey Foods Corp., 828 F.2d at 999; see also Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 780 (M.D. Pa. 2008). "This is because the essence of an unjust enrichment claim is that there is no direct relationship between the parties under which the plaintiff may recover." Synesiou v. DesignToMarket, Inc., Civ. A. No. 01–5358, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002).

Here, the Attias Parties assert that the Foster Parties have been unjustly enriched by (1) "the wrongful transfer of title to the 13th Street Property, wrongful receipt of Mortgage proceeds and refusal to transfer title of Building 1 to Attias," and (2) "[the Foster Parties'] retention of title [to] certain of the Philadelphia Properties and [the Foster Parties'] refusal to allow Attias to develop the Philadelphia Properties." (Am. Countercl. ¶¶ 14–15.)

With respect to the alleged unjust enrichment claim relating to the 13th Street Property, this claim fails on two grounds. Primarily, according to the Attias Action Amended Complaint, Attias entered into a contractual agreement with 532 Brooklyn governing precisely how the 13th Street Property would be handled. Under that agreement, 532 Brooklyn and the Attias Parties were to share in profits from the construction and renovation of the 13th Street Property. Thus, to the extent 532 Brooklyn breached that obligation, the Attias Parties' remedies against 532 Brooklyn sound in contract not in equity.[4]

---

[4] Notably, however, this same principle does not apply to Foster and DEMK. There is no allegation that Foster and DEMK were parties to the 13th Street Agreement and, thus, their relationship with the Attias Parties is not founded on any contractual privity.

13

Moreover, as this claim pertains to Foster and DEMK, the Attias Parties pled no facts, either in the Foster Action Amended Counterclaim or in the Attias Action Amended Complaint, suggesting that Attias and Marion Court conferred any benefit upon Foster and DEMK. As this is a required element of an unjust enrichment claim, the Amended Counterclaim fails to plausibly plead this cause of action.

With respect to the alleged "refusal to allow Attias to develop the Philadelphia Properties," the Attias Parties pled no facts whatsoever in support of this claim. In fact, none of the pleadings at issue explain how the Foster Parties prevented the Attias Parties from developing the "Philadelphia Properties."

In light of these deficiencies, I will dismiss the Attias Parties' unjust enrichment claim.

### C. Fraud

The final Counterclaim at issue alleges fraud. Under Pennsylvania law, fraud is defined as "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." Lind v. Jones, 135 F. Supp. 2d 616, 620 (E.D. Pa. 2001) (citing Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1251 (Pa. Super. 1983)). A claim of fraudulent misrepresentation requires: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Id. (citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994) (additional citations omitted).)

Claims of fraud are subject to a heightened pleading standard. Federal Rule of Civil Procedure 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This heightened pleading standard requires "plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). Stated differently, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of . . . fraud with all of the essential background that would accompany the first paragraph of any newspaper story[,] that is, the who, what, when, where and how of the events at issue." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (citation and internal quotation marks omitted).

Here, the Attias Parties' fraud claim pleads:

> 19. Plaintiffs, individually and through their agents, made misrepresentations regarding the purpose and nature of the transaction and fraudulently induced Attias to sell the 13th Street Property to Plaintiffs, which included, *inter alia*, that renovation of the 13th Street Property could only be accomplished through a sale of the 13th Street Property Plaintiffs.
>
> 20. Plaintiffs falsely represented that they intended to renovate the 13th Street Property, to transfer title of Building I to Attias and to pay the Remaining Purchase Price as agreed. These and other representations were false and were made with knowledge of their falsity and/or reckless disregard for the truth.
>
> 21. Plaintiffs fraudulently concealed Plaintiffs' wrongful sale of the 13th Street Property to Alain Kodsi's business partner and encumbrance of the 13th Street Property with an $8 million Mortgage.
>
> 22. Plaintiffs falsely represented that they intended to proceed as agreed with respect to the Philadelphia Properties.
>
> 23. Plaintiffs wrongfully converted Attias' construction equipment for their own use and benefit and actively concealed that conversion from Attias.
>
> 24. Attias justifiably relied on the agreements entered into with Plaintiffs and reasonably believed that Plaintiffs would abide by the terms of those agreements.

> 25.  Plaintiffs' conduct caused substantial damages to Attias in an amount in excess of $1.5 million.

(Am. Countercl. ¶¶ 19–25.)

The Foster Parties now argue that this claim does not meet the Rule 9(b) requirements because it fails to indicate which individual/entity made the alleged misrepresentations, when they were made, or how they were made. The Foster Parties further press that the Attias Parties do not allege that they ever spoke to Foster and fail to identify what individual within the 532 Brooklyn and DEMK entities made the allegedly fraudulent statements.

I agree that this claim fails to satisfy the stringent standards of Rule 9(b). Nothing in the Amended Counterclaim attributes any of the allegedly fraudulent statements to any particular Plaintiff among the Foster Parties. To the contrary, the Amended Complaint in the Attias Action specifically attributes these identical fraudulent statements to individuals who are not parties to the Foster Action, *i.e.* to individuals/entities other than Foster, DEMK, and 532 Brooklyn. (See Attias Action Am. Compl. ¶ 18 ("Plaintiff Attias was advised by Defendant Kodsi's attorney and friend, Howard Brickner, Esq., that the 13th Street Property had to be transferred into an entity owned solely by Kodsi so that Kodsi could apply proceeds from another real estate transaction in a 1031 exchange towards the development of the 13th Street Property."); ¶ 20 ("Defendant Kodsi, individually, and through his agent Howard Brickner, Esq., made representations regarding the purpose and nature of the transaction and fraudulently induced Plaintiffs to sell the 13th Street Property to Defendants."); ¶ 33 ("On May 16, 2018, without Plaintiffs' knowledge or consent, and in direct breach of the parties' agreements, Defendants sold the 13th Street Property to 5824 N 13th Street LLC, an entity managed by Defendant Kodsi's friend and business partner Lael Shultz."). Moreover, the Amended Counterclaim does not specify when these statements were made or by what means (phone, email, in-person, etc.).

The Attias Parties argue that there are many circumstances where fraud claims may be pled against multiple parties without specifically distinguishing which party engaged in the fraudulent conduct. They claim that a fraud plaintiff cannot be expected to know the exact degree of each individual's involvement at the motion to dismiss stage. The cases the Attias Parties cite in support, however, are distinguishable as they involve claims of corporate fraudulent misrepresentation about a mass-produced product where, at the motion to dismiss stage, a plaintiff could not be expected to have personal knowledge of the details of corporate internal affairs. See Gray v. BMW of N. Am., No. 13-3417, 2014 WL 4723161, at *2 (D.N.J. Sept. 23, 2014) ("It would be wrong to require Plaintiffs at this procedural posture to separate the specific role of BMW AG from the role of BMW NA in perpetrating the alleged fraudulent concealment [about the defective tops on its convertible automobiles]. Because this is a fraudulent concealment case involving the internal doings of a sophisticated corporation, those facts are within the Defendants' knowledge and are properly to be determined through discovery, not on a motion to dismiss."); In re Volkswagen Timing Chain Prod. Liab. Litig., No. 16-2765, 2017 WL 1902160, at *8 (D.N.J. May 8, 2017) (finding that to the extent the plaintiffs asserted common allegations as defendants collectively, it is because the entities are "intertwined through a complex corporate structure" and "[p]laintiffs cannot be expected to know the exact corporate structure and degree of each [d]efendant's involvement" at the motion to dismiss stage).

By contrast here, the Foster Parties are a single individual and two small LLCs. The alleged misrepresentations were made personally to Attias and his own wholly-owned LLCs. Indeed, the Amended Complaint in the Attias Action is able to specifically attribute the allegedly fraudulent statements to Alain Kodsi and Howard Brickner in their individual capacities, not to any of the Foster Parties.

Given these pleading deficiencies, I will grant the Foster Parties' Motion to Dismiss the fraud claim.

## IV. CONCLUSION

For all of the foregoing reasons, I will deny the Foster Parties' Motion to Dismiss the fraudulent transfer Counterclaim against 532 Brooklyn, but I will grant the Motion in all other respects. In doing so, I decline to allow leave to amend. The Attias Parties were put on notice of the precise problems with their Counterclaim in Plaintiffs' original motion to dismiss. Thereafter, the Attias Parties amended their Counterclaim as of right, but failed to cure any of the deficiencies. As further leave to amend would be futile at this juncture, the dismissal of the claims here will be with prejudice.

An appropriate Order follows.