**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RACHEL FOSTER, <u>ET AL.</u>, | : | |
| | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | **No. 18-4853** |
| | : | |
| MOSHE ATTIAS, <u>ET AL.</u>, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| MOSHE ATTIAS and MARION COURT, LLC, | : | |
| | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | **NO. 19-866** |
| 532 BROOKLYN, LLC and ALAIN KODSI, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM OPINION</u>**

**Goldberg, J.**                                                              **May 12, 2023**

This matter involves a tangled mess of failed real estate transactions entered into between Alain Kodsi and his wife Rachel Foster[1] (the "Foster Parties"), and Moshe Attias[2] (the "Attias Parties"). The contentious history of this litigation involves myriad claims and counterclaims.

In April of 2022, on the eve of the first trial listing, the parties submitted eleven motions *in limine*, many of which were belated dispositive motions. Because the case was not actually trial ready, I continued the matter and directed that the parties submit motions for summary judgment.

---

[1]     Kodsi and Foster entered into these transactions with their affiliated entities known as: 532 Brooklyn, LLC ("532 Brooklyn"), DEMK, LLC ("DEMK"), and WPHL Housing Associates, LLC ("WPHL")

[2]     Attias also acted through his affiliated entities known as: Unity Loft, LLC ("Unity Loft") and Marion Court, LLC ("Marion Court")

The parties have now filed Cross-Motions for Summary Judgment on numerous issues. I reluctantly voice my frustration with both parties' presentations of these Motions, which often fail to cite to evidence, or which rely upon facts that are not supported by any evidence of record. And in some instances, the evidence cited is inadmissible. The parties have also been less than clear about the scope of their claims and the legal and evidentiary burdens they bear.[3] That said, I have attempted to carefully review these Motions, which will be granted in part and denied in part. The basis for my rulings is set forth below.

## I.     STATEMENT OF FACTS

The following facts are derived from the evidence submitted by the parties and the parties' statements of facts.[4] Where there is conflicting evidence about a particular fact, Federal Rule of Civil Procedure 56 requires that I view those facts and evidence in the light most favorable to the non-moving party. Facts recited by the parties but not pertinent to the issues at hand are not included.

### A.     The Pending Actions

On November 5, 2018, three of the Foster Parties (Rachel Foster, DEMK, LLC, and 532 Brooklyn) commenced a federal action against two of the Attias Parties (Moshe Attias and Unity Loft) setting forth federal claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962, and state law claims for fraud, breach of fiduciary duty, and breach of contract (The "Foster Action").

---

[3]     I also note that neither party has complied with my applicable Policies and Procedures in filing their statements of fact. On August 1, 2022, the Foster Parties filed a Motion for Summary Judgment in the form of a brief without a separate statement of material facts and failed to cite to any evidence in support of their arguments. Thereafter, and only in response to the Attias Parties' Motion for Summary Judgment, did the Foster Parties provide a statement of facts and citations to evidence. For their part, the Attias Parties submitted a statement of undisputed material facts with their Motion for Summary Judgment but failed to reference any evidence for a substantial number of their averments.

[4]     Where facts are undisputed, I will reference the parties' pleadings as follows: Foster Parties' Statement of Undisputed Facts ("FSUF"); Attias Parties' Response ("AR"), Attias Parties' Statement of Undisputed Facts ("ASUF"), and Foster Parties' Response ("FR"). If a statement is disputed and the dispute can be easily resolved by reference to the exhibits, I will cite the supporting exhibits. If a statement is disputed, but the dispute cannot be resolved by reference to the exhibits, I will note the dispute without resolving it. I will not rely on any statement of fact that is unsupported by reference to a specific exhibit.

The Attias Parties (Attias and Unity Loft) filed a counterclaim complaint alleging fraudulent transfer, unjust enrichment, and fraud.  On November 26, 2019, the parties stipulated to dismissal of the Foster Parties' breach of fiduciary claims.  On September 9, 2020, I dismissed all counterclaims against Foster and DEMK with prejudice and all but the fraudulent transfer counterclaim against 532 Brooklyn.

On February 15, 2019, Moshe Attias and Marion Court, LLC filed a state court action in the Philadelphia Court of Common Pleas against 532 Brooklyn, LLC and Alain Kodsi.  (The "Attias Action"). 532 Brooklyn and Kodsi removed the case to federal court, and I consolidated that matter with the Foster Action.  On December 16, 2019, the Attias Parties filed an amended complaint in the Attias Action adding WPHL Housing Associates, LLC ("WPHL") as a party, and setting forth claims for several breaches of contract, breach of promissory note, fraudulent transfer, unjust enrichment, fraud, conversion, and specific performance.  WPHL then filed counterclaims for breach of fiduciary duty and breach of contract.

### B.    The Initial Real Estate Transactions at Issue

The parties have entered into a series of real estate transactions that give rise to their countless disputes.  To the extent the parties have provided evidence regarding these transactions, I will attempt to set forth the facts related to each property at issue.

#### 1.    Unity Street Property

Unity Loft is a limited company formed by Attias to purchase the property located at 1328–34 Unity Street, Philadelphia ("Unity Street Property").  (Foster Parties' Ex. 1, Dep. of Moshe Attias ("Attias Dep.") 14:21–24, 19:11–12.)  Attias testified that he opened this LLC under the instruction of his partner in the transaction, Alain Kodsi, but because Kodsi did not want to be named in the LLC, Unity Loft was opened under Attias's name only.  (Id. at 19:22–20:22, 21:5–22.)  Attias registered Unity Loft with the Internal Revenue Service indicating that he was the sole member.  (FSUF ¶ 5; AR ¶ 5.)

Unity Loft purchased the Unity Street Property for $325,000, which he obtained from Rachel Foster via wire transfer.  (FSUF ¶ 8; AR ¶ 8; Attias Dep. 27:7–28:9; Foster Parties' Ex. 3.)  Under the original deal between Attias and Kodsi, Kodsi was to invest $350,000 and then become a fifty-fifty

partner.  (Attias Dep. 32:21–33:7.)  According to the Attias Parties, however, in January 2018, the funds advanced by Foster (and Kodsi) for the Unity Street Property were returned, and the Foster Parties released all claims to the Unity Street Property.  (Id.)  (Attias Parties' Ex. BB.)  Attias rented out the Unity Street Property to someone named Joseph who never paid rent.  (FSUF ¶ 13; AR ¶ 13.)

### 2. The Small Properties

In June 2016, DEMK, LLC (part of the Foster Parties) transferred $400,000 to Home Design Services, Inc. (an entity owned and controlled by Attias).  (FSUF ¶¶ 14–17; ASUF ¶¶ 14–17.)  The money was intended for all expenses related to the purchase of eight single family residential properties at a Philadelphia's sheriff sale (the "Small Properties").  (Attias Dep. 52:6—23.)  The Small Properties were to be titled under the name of an entity called AEM Investments.  (FSUF ¶ 18; AR ¶ 18.)

Among the properties acquired under this agreement was 749 Locust Avenue, Philadelphia, Pennsylvania.  (FSUF ¶ 19; AR ¶ 19.)  When purchased, however, that property was titled solely in Attias's name, not in the name of AEM Investments.  Attias contends that the erroneous titling was the result of a mistake by the Philadelphia Sheriff's Office when preparing the deed, which put the deed solely in Attias's name.  (FSUF ¶¶ 19–21; AR ¶¶ 19-221.)

The Foster Parties assert, without evidence, that Attias used only $264,536 of the $400,000 transferred to purchase the Small Properties but refused to return the remaining $135,464.  Indeed, the exhibit cited by the Foster Parties is an unauthenticated handwritten document on a sheet of lined notebook paper.  (Foster Parties' Ex. 5.)  The Attias Parties counter that the $264,536 amount did not reflect any of the purchase related costs such as taxes, insurance, attorneys' fees, and liens, and that the actual amount spent was approximately $320,000 for all of the Small Properties.  (Attias Parties' Ex. I, Dep. of Alain Kodsi ("Kodsi Dep.") 127:17–21.)

The Attias Parties also assert that, under a January 2018 Agreement between Attias and Kodsi, described in more detail *infra*, the remaining money was to be kept by Attias as payment for construction work on a prior project, the West Philadelphia High School Project.  (Attias Parties' Ex. BB, p. 5.)

### 3.   The Lippincott Lofts Property

Attias formed an entity called Lippincott Lofts, LLC for the purpose of purchasing a property known as Lippincott Lofts.  (FSUF ¶ 25; ASUF ¶ 25.)  The IRS documents reflect that Attias was the sole member of Lippincott Lofts, LLC.  (Attias Dep. 74:22–75:4.)

In 2017, pursuant to a verbal joint venture agreement with Kodsi, Attias, through Lippincott Lofts, LLC, acquired two warehouses located at 2016 W. Lippincott Street and 2024–34 W. Lippincott Street. Under the agreement, Kodsi would invest the capital and then the parties would split the profits 70/30. (Kodsi Dep. 144:8–13.)

### 4.   The Locust Avenue Lots

In April 2016, Attias acquired two lots located at 704–718 and 720 Locust Avenue ("Locust Avenue Lots") pursuant to a verbal joint venture agreement with Kodsi to purchase, develop and resell the Locust Avenue lots.  (ASUF ¶ 26; FR ¶ 26.)

### 5.   The 13th Street Property

I note that many of the facts recited by the Attias Parties regarding the 13th Street Properties are unsupported by any citation to the record.  Accordingly, for purposes of summary judgment, I must disregard them.  Facts which do have record cites reflect that, in 2016, Kodsi was seeking to avoid paying capital gains tax on proceeds from the sale of real estate by proceeding with an exchange under Section 1031 of the Internal Revenue Code.[5]  Accordingly, he spoke with Attias about purchasing a property— the "13th Street Property"—owned by Attias's entity Marion Court, LLC and located at 5840–5850 N. 13th Street and 5824–5838 N. 13th Street in Philadelphia, PA.  In connection with those discussions, Kodsi represented that Attias could not be a co-owner of replacement property in order for the 1031 exchange to occur.  (Kodsi Dep. 33.)

---

[5]   Under the IRS Code, whenever someone sells investment property and has a gain, tax on the gain is owed at the time of sale.  IRC Section 1031 provides an exception and allows the individual to postpone paying tax on the gain if he/she reinvests the proceeds in similar property as part of a qualifying like-kind exchange.  https://www.irs.gov/pub/irs-news/fs-08-18.pdf.

On July 27, 2016, Attias, on behalf of Marion Court, executed a Residential Contract of Sale ("Agreement of Sale") with 532 Brooklyn whereby Attias agreed to transfer the 13th Street Property, through Marion Court, LLC, to 532 Brooklyn. (Foster Parties' Ex. 6; Attias Parties' Ex. U.)  According to the Agreement of Sale, the total purchase price for the 13th Street Property was $3.8 million. (Foster Parties' Ex. 6; Attias Parties' Ex. U.)  The Agreement of Sale provided that Marion Court, LLC would renovate the property pursuant to certain construction plans. (Id.)

At his deposition, Attias testified that, according to discussions prior to the execution of the contract, the $3.8 million was going to be used to renovate the two separate buildings at the 13th Street Property into approximately seventy-five residential units. (Attias Dep. 131:11–14.)  Attias asserted that he first needed to pay the debt on the property and then start construction of the project, including the purchase of material for both buildings that comprised the 13th Street Properties. (Id. at 132:15–21, 134:5–15.)  Once Kodsi invested all $3.8 million and both buildings were completed, Attias understood that Kodsi would keep building number one, Attias would keep building number two, and Attias would give Kodsi $1.4 million representing half of Kodsi's investment minus $500,000 for the parcel of land next to building one that Kodsi would keep. (Id. at 132:2–8.)  Ultimately, Attias believed that once the project was done, Attias would have building two with a $1.4 million mortgage, while Kodsi would have building one and the adjacent lots. (Foster Parties' Ex. 6; Attias Parties' Ex. U.)  Notably, none of this was spelled out in the Agreement of Sale.

On July 28, 2016, 532 Brooklyn wired the sum of $600,000 to Marion Court, LLC. (Foster Parties' Ex. 7.)  On August 29, 2016, 532 Brooklyn wired another $200,000 to Marion Court, LLC. (Foster Parties' Ex. 8.) On September 8, 2016, 532 Brooklyn wired $1,530,469.95 to Marion Court, LLC. (Foster Parties' Ex. 9.)  532 Brooklyn also signed a promissory note (the "Promissory Note") in Marion Court's favor, securing the payment of the remaining approximately $1,322,405.05 of the purchase price, plus interest at a rate of 3% per annum. (ASUF ¶ 43; FR ¶ 43; Attias Parties' Ex. V.)  Under the Agreement

of Sale, Marion Court, LLC was to "apply all proceeds . . . to complete the Project."[6]  (Foster Parties' Ex. 6, at p. 19.)    Attias understood that this $2.3 million was going to be used to start construction on the project but not to complete it until Kodsi put in the remaining $1.5 million.[7]  (Attias Dep. 134:4–135:7.) Attias agreed to do the renovation at cost without any overhead or profit.[8]  (Id. 165:5–23.)

Marion Court paid all of the liens on the 13th Street Property, totaling approximately $400,000, in accordance with the Agreement of Sale.  (ASUF ¶ 45; FR ¶ 45.)  Marion Court also paid all closing costs on 532 Brooklyn's acquisition of the 13th Street Property in excess of $150,000.  (ASUF ¶ 46; FR ¶ 46.) Attias admitted, however, that, from the $2.3 million in proceeds he received from 532 Brooklyn, he purchased a house at 3900 Buck Road in Huntingdon Valley, Pennsylvania.  (Attias Dep. 163:5–164:6.) Attias explained that Kodsi knew Attias was buying the house, at the purchase price of $1,182,500, and Attias continued doing construction on the 13th Street Property using money from his construction company.  (Id. at 164:9–23, 169:3–6.)    Attias also stated that he used some of the money from 532 Brooklyn to purchase a property in Atlantic City.  (Id. at 165:14–166:10.)

6.       5822 N. 13th Street Property

---

[6]       The Attias Parties contend that, at the time it was signed, the Agreement of Sale did not include a page sixteen, which contained the provision about Marion Court, LLC applying all proceeds to complete renovations on the Project.  The Attias Parties, however, cite no evidence to support that averment. Moreover, they do not dispute that the Agreement started a sentence on page fifteen, which would be incomplete without the ensuing language on page sixteen.  In addition, the Agreement contained a page seventeen, which would render the absence of a page sixteen suspect.

[7]       Attias contends that he ultimately paid $1,343,762.63 in taxes, expenses, and costs for the 13th Street Properties.  In support of this contention, however, he relied on his "Damages Chart" which is an unsworn, unauthenticated document listing the Attias Parties' preliminary damages.  This document does not constitute evidence upon which I can rely at summary judgment.  (Attias Parties' Ex. RR.)

[8]       The Attias Parties claim that Attias and his crews worked on renovating the 13th Street Properties from approximately September 20, 2015 through May 29, 2017.  In support of this statement, however, the Attias Parties cite to a chart of the time records.  This exhibit, however, is dated March 28, 2022, and thus does not constitute a contemporaneously-prepared business document.  Moreover, the Foster Parties assert that neither this summary document, nor the underlying "time records" from which this document was created were produced in discovery.

In December 2016, Attias acquired a residence located at 5822 N. 13th Street in the name of 532 Brooklyn, LLC.  (Attias Parties' Ex. P.)

**C.**      **The 2018 Agreements**

In January 2018 and thereafter, Attias, Foster, and Kodsi entered into three additional written agreements.

1.      The WPHS Agreement

The first agreement was entitled the "WPHS" Agreement related to a project at West Philadelphia High School.  This agreement was signed by Attias, Foster, Kodsi, and an individual named Andrew Bank, and it provided a schedule for payments by WPHS Venture Partners (an LLC owned by Foster and Bank) to Attias's construction company for completion of the project.  It also established Attias's responsibility to complete the WPHS project by providing labor to complete the project.  (Attias Parties' Ex. AA.)

2.      The Moshe/Alain Agreement (aka, the "Unwinding Agreement")

The second agreement was entitled the "Moshe/Alain Agreement" and purported to set forth the rights and responsibilities of Attias and Kodsi, and their respective corporate entities, with respect to the "sale, purchase and distribution of certain properties, the transfer of certain membership interests in the Companies, and for the completion of certain ongoing and future development projects."  (Attias Parties' Ex. BB.)  Under this contract, the parties agreed to the following:

- SDSP, LLC (an entity owned by Foster and Bank) would pay Attias a total of $1.2 million due for work it has done or would do to complete construction on the WPHS property, which would replace any payment obligations under the existing subcontracts.  Payments received by Attias on the WPHS project would be applied as follows:

    - Payment "A" of $350,000 would be assigned to Foster as repayment of funds invested by Kodsi or his companies in the Unity Street Property.  Upon receipt of the funds, Kodsi would acknowledge that any interest or claim in the Unity Street Property has been released, satisfied, or discharged.  The payment was to be made on February 1, 2018, or as soon as all units leased at WPHS for February 1, 2018, were completed.

    - Payment "B" of $50,000 was to be made to 532 Brooklyn in exchange for transfer of title of 5822 N. 13th Street from 532 Brooklyn to Attias or his designee.

    - Payment "C" of approximately $80,000 was to be assigned by Attias to DEMK to repay a cash advance to Attias.  Specifically, a cash advance of $400,000 was made by DEMK to

Attias to buy the Small Properties and the Locust Street Lots, and the Small Properties owned by AEM.  About $320,000 was spent to purchase those properties with approximately $80,000 representing the remaining balance of those funds.

- The balance of the $1,200,000 distribution in the amount of $720,000 would be used for the renovation of the property at 5824-38 North 13th Street.  Attias was to provide an eight-month schedule of completion, be lien free at each funding, and provide a general summary of expenses.

- As to the 13th Street Project, the Moshe/Alain Agreement recognized that that the two properties at issue (building 1 and building 2) were currently owned by 532 Brooklyn.  Although Attias and Kodsi had originally agreed to jointly renovate and share profits in the properties, the Agreement expressed a desire for separate ownership.  This agreement was to "supersede all previous agreements."

  - The balance of the $1,200,000 distribution, in the amount of $720,000, would be used to finance the construction of building 1.  Of that $720,000, $150,000 would be paid to Attias on February 1, 2018, less certain defined amounts, and $100,000 would be paid on each of March 1, 2018, April 1, 2018, May 1, 2018, June 1, 2018, and July 1, 2018, as long as completion of the work was done at WPHS as described above.  The remaining balance of $70,000 (subject to adjustment based on the remaining amount of cash advanced for the Small Properties) would be paid on August 1, 2018.

  - 532 Brooklyn would then enter into a contract to sell the building 2 property to Attias or his corporate designee for $250,000, only if both buildings were renovated substantially.  Closing was to take place on or before August 1, 2018, but Attias would have the right to extend closing for an additional six months upon payment of $5,000 per month to 532 Brooklyn for each of the extended months.

  - Kodsi was to assist Attias in obtaining up to $1,650,000 in financing for acquisition and construction of building 2.  The financing could be obtained after the renovation of building 1 was completed with a certificate of occupancy.  $250,000 of the financing would be for the acquisition of building 2 and the balance of $1.4 million was to be a construction loan funded pursuant to an approved schedule.

- As to the Small Properties, the parties acknowledged that they were owned by AEM, and Attias agreed to sign any documents or affidavits reasonably required to confirm that he has no interest in those properties.  Attias was also to assist in the disposition of those properties.

- As to the Locust Avenue Lots, the parties agreed that although they were owned by Attias, DEMK had a partnership interest as a result in the money it invested.  As such, Attias agreed to pay DEMK the sum of $400,000 to purchase and discharge all interest of DEMK as it related to those properties, and Attias would convey title to the Locust Avenue Lots to 720LOCUSTAVE, LLC no later than January 25, 2018.

- As to Lippincott Loft, the parties recognized that the funding for the purchase of the properties owned by Lippincott Loft, LLC was provided by Rachel Foster.  DEMK was to pay Attias $360,000 for his interest in Lippincott, and Attias would simultaneously repay the $360,000 to Foster to reimburse for her capital contribution.  Foster would then transfer her membership

interest in Lippincott Loft to Attias, and Attias would then transfer his membership interest in Lippincott Loft to DEMK.  Upon completion of the transaction, Attias would have no interest in Lippincott Loft, LLC.

(Attias Parties' Ex. BB.)

On January 26, 2018, as required by the Moshe/Alain Agreement, Attias paid $400,000 to DEMK to purchase the Locust Avenue Lots located at 704–718 and 720 Locust Avenue.  (ASUF ¶ 60; FR ¶ 60.) On the same day, Attias transferred all of his ownership in Lippincott Loft LLC to DEMK.  (ASUF ¶ 61; FR ¶ 61.)  Although the Attias Parties claim to have fulfilled other obligations under the Moshe/Alain Agreement, they provide no facts of record to support these claims.

On May 16, 2018, 532 Brooklyn sold the 13th Street Property to an entity called 5824 N. 13th Street, LLC, owned by Rachel Foster and Lael Shultz.[9]  (Attias Parties' Ex. FF; Attias Parties' Ex. HH, Dep. of Lael Shultz ("Shultz Dep.") 39.)  On the same date, 5824 N. 13th Street Investors, LLC loaned 5824 N. 13th Street, LLC the sum of $8,000,000, secured by a mortgage on the 13th Street Property.  (Attias Parties' Ex. GG.)  Shultz did not recall any money being exchanged in connection with the sale of the property.  (Shultz Dep. 46–48.)

3. The WPHL Agreement

In August 2016, WPHL Housing Associates, LLC—of which Attias, Kodsi, and Andrew Bank were members—acquired three residential properties, located at 2 Leverington Avenue Unit 25, and 4810 and 4812 Parrish Street.  (Attias Exs. E and F; FSUF ¶ 41;[10] AR ¶ 41; ASUF ¶¶ 70–71; FR ¶¶ 70–71.)

On January 26, 2018, the parties entered into the "WPHL Agreement," which provided that "WPHL Housing Associates, LLC will enter into a contract with [Attias], or an entity which he designates,

---

[9]     It is unclear whether the name is "Lael Shultz" or "Lyle Schultz" as the parties use both forms of his name.  For consistency, I will refer to him as "Lael Shultz."

[10]    The Foster Parties have this paragraph numbered as "37."  After the original paragraph 37 of their statement of facts, however, the Foster Parties number their next paragraph as "34" and proceed from there, resulting in duplicatively-numbered paragraphs.  For clarity, I will refer to the second paragraph 34 as paragraph 38, the second paragraph 35 as paragraph 39, etc.

to sell the properties it owns at 4810 and 4812 Parrish Street, Philadelphia, and 2 Leverington Road, Unit

25, Philadelphia." (Attias Parties' Ex. CC ¶ 1.)  The original settlement date for the sale was May 1, 2018,

but Attias had the option to extend closing for three additional months upon payment to WPHL of $2,200

for each month of extension.  (Id. at p. 3.)  The agreement provided that "[i]f closing does not occur by

August 1, 2018, [Attias] will lose any claim to these properties."  (Id.)

On May 8, 2018, Attias secured mortgage loan commitment in the amount of $265,000 for the

WPHL Properties, as well as for a property at 9 W. Broad Street, Paulsboro, NJ 08066.  (Attias Parties'

Ex. KK.)  On May 11, 2018, Kodsi and Bank's lawyer, Erik Gabell, sent a text message to Bank saying:

> Andrew on Friday 5/11 we were contacted by a title company (I cannot
> remember which one) who got our name from Moshe Attias asking if I
> would be able to provide confirmation that WPHL Associates had
> authorized the financing of the Leverington Place property.  Moshe had
> represented to them that he was authorized to place financing on the
> property but that he had no documentation but I could provide it.  I will
> look to see if I have anything in writing from the title company but my
> recollection is that I told them verbally that I was not in receipt of any such
> authorization but would contact one of the company's principals.  I then
> called Alain and he confirmed Moshe was not authorized to finance the
> property and I called back the title company and informed that they were
> specifically NOT authorized to close and Moshe had no authority to
> encumber the property.  I subsequently had a call with the broker, Eric
> Cohen, either later that day or the following Monday and confirmed that
> WPHL Associates had not authorized the transaction and so until I was
> directed otherwise the transaction was dead.

(Attias Parties' Ex. LL.)[11]

On May 16, 2018, the same date that an $8 million mortgage was imposed on the 13th Street

Property, WPHL placed the following mortgages on each of the WPHL Properties: 4810 Parrish Street—

$60,000, 4812 Parrish Street—$60,000, and 2 Leverington, Unit 25—$120,000.[12]  (Attias Parties' Ex.

MM.)

---

[11]    This text message is unsworn, not authenticated, and constitutes hearsay.  At trial, it would not be
admissible without testimony from Mr. Gabell.

[12]    The Attias Parties cite the deposition of Andrew Bank for the proposition that Bank and Kodsi
purposefully removed Attias as a member of WPHL, placed mortgages on the WPHL Property to prevent

With the understanding that WPHL was going to sell the 2 Leverington Road property to him, Attias entered into a lease agreement, dated April 1, 2018, with an individual named Ian MacLean, who was one of Attias's employees.  (Attias Dep. 192:23–194:5.)  At the time of that lease, Attias did not yet own the property.  (Id. at 194:6–15.)  Mr. MacLean took occupancy of the property prior to May 1, 2018.  (Id. at 194:17–195:3.)

At some point, Andrew Bank, who was affiliated with Kodsi, went to the property, changed the locks, and took MacLean's belongings outside.  Attias contacted the police department, and a locksmith changed the lock back and gave MacLean a key.  (Id. at 195:17–196:24.)  Mr. MacLean did not pay rent to Attias, and Attias never asked Kodsi if he could live there.  (Id. at 197:1–198:12.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).  "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality."  Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" only if there is a sufficient evidentiary basis to allow a reasonable fact-finder to return a verdict for the non-moving party.  Id.

---

Attias from financing the acquisition, and never actually made any mortgage payments to the lender. (ASUF ¶ 77.)  None of the deposition testimony cited supports these allegations.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue.  Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015).  The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Notably, these summary judgment rules do not apply any differently where there are cross-motions pending.  Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).  Rather, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'"  Id. (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   FOSTER PARTIES' MOTION FOR SUMMARY JUDGMENT

### A.   Attias Parties' Breach of Contract Claim

The Attias Parties contend that Kodsi and 532 Brooklyn breached an oral agreement regarding the 13th Street Property.  As noted above, Attias testified at his deposition that, according to the parties' oral discussions prior to the execution of the written contract, Attias's entity, Marion Court, was going to sell the 13th Street Properties for $3.8 million, which Attias was going to use to renovate the 13th Street Property into approximately seventy-five residential units.  (Attias Dep. 131:11–14.) Once Kodsi invested all $3.8 million and both buildings were completed, Attias understood that Kodsi would keep building number one, Attias would keep building number two, and Attias would give Kodsi $1.4 million representing half of Kodsi's investment minus $500,000 for the parcel of land next to building one that

Kodsi would keep. (Id. at 132:2–8.) Attias claims that Kodsi failed to provide the requisite funding for the renovations and failed to transfer building two back to Attias. [13]

The Foster Parties respond that the Attias Parties' breach of contract claim must be dismissed on three grounds: (1) the Attias Parties cannot maintain the claim against Kodsi individually because he is not a party to the written Agreement of Sale; (2) the alleged terms of the oral contract contradict the terms of the written Agreement of Sale and, therefore, rely on inadmissible parol evidence; and (3) the Attias Parties lack evidence to support their claim for damages. As I find merit to the first two arguments, I will grant summary judgment regarding these claims on those grounds.

### 1. Whether the Breach of Contract Claim Against Kodsi Must Be Dismissed

The Attias Parties' Amended Complaint premises the breach of contract claim on a July 2016 oral agreement with respect to the 13th Street Property that imposed obligations on two limited liability companies, Marion Court and 532 Brooklyn. (Attias Action, Am. Compl. ¶ 17.) The Amended Complaint then recognizes that, on July 26, 2016, "Plaintiff Marion Court and Defendant 532 Brooklyn entered into a written Agreement of Sale transferring ownership of the 13th Street Property from Marion Court to 532 Brooklyn." (Id. ¶ 19.) The Amended Complaint attaches a copy of that Agreement signed by Attias, on behalf of Marion Court, LLC, and Kodsi, on behalf of 532 Brooklyn, LLC. (Id. Ex. 1.)

The Foster Parties now correctly contend that Kodsi is not a party to that agreement and, therefore, cannot be held liable for breach of contract. Under Pennsylvania law, a corporate officer who negotiates a contract on behalf of a corporation cannot ordinarily be held liable for the contract. Landan v. Wal-Mart Real Estate Business Trust, No. 12-cv-926, 2013 WL 3990825, at *9 (W.D. Pa. Aug. 5, 2013). Further, an individual cannot be liable for breach of contract unless he or she is a party to that contract. Id. (citing Pennsylvania state cases); see also Mazzo v. NRI Data & Business Products, Inc., No. 05-cv-23, 2006

---

[13]     The Attias Parties also argue that they are entitled to a breach of contract damages based on the Foster Parties' breach of the Moshe/Alain Agreement. As I discuss in more detail with respect to the Attias Parties' Motion for Summary Judgment, the Attias Amended Complaint contains no claim for breach of the Moshe/Alain Agreement.

WL 8459515, at *7 (E.D. Pa. Oct. 20, 2006) ("Similarly, the fact that individual agents of a corporation can bind the corporation does not then mean that individuals can be held liable on a breach of contract claim against a corporation.").  Thus, because Kodsi was not a party to the Agreement of Sale, he is entitled to summary judgment as to the breach of contract claim.

In an effort to implicate Kodsi, the Attias Parties contend that the written Agreement of Sale did not contain all of the material terms of the prior oral agreement regarding the 13th Street Property.  Even assuming that oral agreement could somehow be considered—a point that I address in more detail below—the Attias Parties have failed to introduce any evidence that Kodsi, as opposed to 532 Brooklyn which owned the subject property, was the actual party to that oral agreement.

The Attias Parties also claim that Kodsi fraudulently induced Attias to sell the 13th Street Property to him, thus making Kodsi individually liable.  But, the Attias Parties offer no legal support for the proposition that an individual who is potentially liable for the tort of fraudulent inducement may thereafter be liable for breach of contract to which that individual was not a party.

Absent any basis for holding Kodsi liable for breach of contract, I will grant the Foster Parties' Motion for Summary Judgment on the breach of contract claim against Kodsi.

> 2.    Whether the Parole Evidence Rule Bars the Attias Parties' Contract Claims

The Foster Parties next seek summary judgment on the Attias Parties' breach of oral contract claim against 532 Brooklyn under the parol evidence rule.

The Pennsylvania Supreme Court[14] has explained the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement

---

[14]    Neither party addresses the applicable state law to be applied to a contract, drafted on a New York form document, between a New York party and a Pennsylvania party for a property located in Pennsylvania.  Both parties cite to Pennsylvania law.  Absent the parties' identification of any differences between New York and Pennsylvania contract law, and given that the subject property is within this Commonwealth, I will apply Pennsylvania law.

> between the parties, and its terms and agreements cannot be added to nor
> subtracted from by parol evidence.

Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (quoting Gianni v. Russell & Co.,

126 A. 791, 792 (Pa. 1924)).

Courts interpreting Pennsylvania law have explained that when, as here, there are claims of

fraudulent inducement, the parol evidence rule applies when the following two conditions are satisfied:

"(1) . . . the written agreement 'contains terms which directly deal with the subject matter of the

alleged oral [or written] representation; and (2) [the written agreement] represents the entire contract

between the parties, particularly where the written agreement also contains

an integration clause.'"  Claude Worthington Benedum Found. v. Bank of New York Mellon Corp., 422

F. Supp. 3d 940, 947 (W.D. Pa. 2019) (quoting Palermo Gelato, LLC v. Pino Gelato, Inc., No. 12-cv-931,

2013 WL 3147312, at *4 (W.D. Pa. June 19, 2013)).  "Once a writing is determined to be the parties'

entire contract, the parol evidence rule applies, and evidence of any previous oral or written negotiations

or agreements involving the same subject matter as the contract is almost always inadmissible to explain

or vary the terms of the contract."  Yocca, 854 A.2d at 436–37.

To determine whether or not a writing is the parties' entire contract, the writing must be examined

and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal

obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively

presumed that [the writing represents] the whole engagement of the parties . . ."  Id at 436 (internal

quotations omitted).  "An integration clause which states that a writing is meant to represent the parties'

entire agreement is . . . a clear sign that the writing is meant to be just that and thereby expresses all of the

parties' negotiations, conversations, and agreements made prior to its execution."  Id.  (quotations

omitted).  Where a contract contains such a clause, the parol evidence rule bars consideration of any prior

contemporaneous oral agreements between the parties on that subject.  American Diabetes Assoc. v.

Friskney Family Trust, LLC, 177 F. Supp. 3d 855, 872 (E.D. Pa. 2016).

Here, the written Agreement of Sale contains terms which directly deal with the subject matter of

the alleged oral representation—the sale and renovation of the 13th Street Property owned by Marion Court. Moreover, the Agreement of Sale contains an integration clause which states, "[a]ll prior understandings, agreements, representations and warranties, oral or written, between Seller and purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither part[y] relying upon any statement made by anyone else that is not set forth in this contract." (Am. Compl., Ex. 1 ¶ 28(a).) Under the parol evidence rule, the Attias Parties are barred from introducing any evidence of the prior oral agreement.

In an effort to circumvent this fundamental principle of contract law, the Attias Parties pose four bases for admitting the extrinsic evidence: (a) the "admissions exception" to the parol evidence rule; (b) clarification of the written contract's ambiguous and/or missing terms; (c) evidence of the parties' course of dealing; and (d) evidence of the Foster Parties' fraud. I address each argument individually.

a. The "Admission Exception"

The admission exception to the parol evidence rule is "when the party seeking to enforce the agreement as written has made admissions that the agreement does not, in fact, constitute the entire agreement between the parties even when it contains an integration clause." Haywood v. Univ. of Pittsburgh, 976 F. Supp. 2d 606 (W.D. Pa. 2013). The Pennsylvania Supreme Court has recognized this exception to the parol evidence rule:

> The parol evidence rule has never barred the introduction of clear, precise, and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that the agreement as written did not express what the parties intended and that what the parties intended was omitted from the agreement by mistake or accident.

Scott v. Bryn Mawr Arms, Inc., 312 A.2d 592, 595 (Pa. 1973) (quoting In re Boyd's Estate, 146 A.2d 816, 820 (Pa. 1958)); see also Yuhas v. Schmidt, 258 A.2d 616, 621 (Pa. 1969).

The Attias Parties assert that the Foster Parties admitted, "both in their pleadings and in sworn deposition testimony," that the Agreement of Sale did not contain the entire agreement between the parties regarding the 13th Street Property." (Attias Parties' Resp. Opp'n Summ. J. 9.) Specifically, in their

Amended Complaint,[15] the Foster Parties alleged that, under the Agreement of Sale, a portion of the $2.4 million down payment of the 13th Street Property was allocated to pay for the construction of the buildings, and that the Attias Parties failed to perform that construction work.[16]  (Am. Compl. ¶ 57.)  According to the Attias Parties, the written contract does not make the down payment contingent upon the performance of any construction work, meaning that the Foster Parties must be seeking to enforce the terms of pre-contract verbal agreements related to the 13th Street Property.  In turn, the Attias Parties assert that this claim constitutes an admission by the Foster Parties that the Agreement of Sale is not a full, complete, and unambiguous agreement between the parties as it pertains to the 13th Street Property.

The Attias Parties' characterization of the Foster Parties' statements is inaccurate.  The Foster Parties' contention that Attias failed to apply the down payment proceeds to renovation of the 13th Street Property rests on an explicit term in the written contract.  The Agreement of Sale provided:

> 36.    Seller Drawn down of the Down payment.  The Seller shall be permitted to receive the following draw downs (the "Draw(s)") for the Down payment tendered by the Purchaser hereunder and the parties hereby unconditionally authorize the Escrow to pay such Draws to Seller.  **Seller shall ONLY use the proceeds of the Draws to pay for Seller's completion of the Project and for no other purpose.**

(Foster Parties' Ex. 6, ¶ 36 (emphasis added).)  The Attias parties have failed to produce "clear, precise, and convincing evidence" that the Foster Parties "admitted and acknowledged that the agreement as written did not express what the parties intended and that what the parties intended was omitted from the agreement by mistake or accident." Scott, 312 A.2d at 595.

---

[15]    Although the Attias Parties also cite to averments in the original Complaint, it is well established that an amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013) (quotation omitted).

[16]    The Attias Parties also claim that Kodsi testified in similar fashion at his deposition.  They cite to pages 40 and 45 of that deposition transcript, but neither party has provided those pages.  (See Attias Parties' Resp. Opp'n Summ. J. 10.)

b.      *Extrinsic Evidence to Clarify the Agreement of Sale*

In an alternative argument, the Attias Parties argue that evidence of prior or contemporaneous oral agreements is admissible to resolve ambiguities in a contract. They posit that the Agreement of Sale is "replete with ambiguous, missing, inconsistent and erroneous terms, many of which were clearly not intended to be enforced." (Attias Parties' Resp. Opp'n Summ J. 11.)

While extrinsic evidence may be used to modify contract terms when an integrated contract is ambiguous or to add contract terms omitted by fraud in the execution, by accident, or by mistake, the Attias Parties ascribe too broad of an application to this exception. SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 213 n.5 (3d Cir. 2022). As a primary matter, they do not point to any particular terms of the contract which are susceptible to different meanings, but instead rely on extrinsic evidence to argue that terms not included in the contract must have been implied in it.[17] "For the court to read the contract that way would 'add to' the terms of the contract that is not on its face ambiguous, thus violating the parol evidence rule." Reynolds Packaging KAMA, Inc. v. Inline Plastics Corp., No. Civ. A. 08-1902, 2010 WL 1024734, at *4 (M.D. Pa. Mar. 17, 2010).

Moreover, the mere existence of an ambiguity in a contract does not open the doors to all extrinsic evidence that could modify all provisions of the contract. Rather, extrinsic evidence is admissible only to resolve the particular, narrowly-defined ambiguity or obvious omission. See EMC Outdoor, LLC v. Stuart, No. 17-cv-5172, 2021 WL 1224064, at *6 n.6 (E.D. Pa. Mar. 31, 2021); see also Camp Ne'er Too Late, LP v. Swepi, LP, 185 F. Supp. 3d 517, 544 (M.D. Pa. 2016) ("Where the words are ambiguous . . . 'parole evidence is admissible to explain or clarify or resolve the ambiguity.'"). Here, the alleged

---

[17]     For example, the Attias Parties note that the Agreement identifies Attias as the seller of the 13th Street Property, even though it was actually owned by Marion Court, LLC. Moreover, although the Agreement of Sale identifies the property to be sold as, in part, a parcel of land more particularly described in "Schedule A," the contract did not include a Schedule A. Additionally, the contract references construction plans that are "attached hereto," but no such plans were attached. Finally, the Attias Parties contend that the Agreement of Sale required construction completion by a date left blank. As such, the Attias Parties assert that extrinsic evidence must be admissible to clarify and resolve all of the ambiguities and missing terms in the contract. None of these alleged "ambiguities" bear in any way on the issues involved in the breach of contract claim.

ambiguities identified by the Attias Parties are not resolved by the admission of all the terms of the parties' prior oral agreement, and the Attias Parties may not use parol evidence to add wholly new obligations to the written contract.

c.    *Course of Dealing Evidence*

The Attias Parties next contend that extrinsic evidence is admissible to show the parties' course of conduct.  More specifically, the Attias Parties aver that from 2015 to 2018, the parties were involved in many construction and real estate transactions—the vast majority of which were not reduced to writing—during which Attias would identify and present properties to Kodsi, the Foster Parties would finance the purchase of these properties, and the parties would share in the eventual profits.  The Attias Parties go on to posit that the parties followed a similar course of conduct regarding the 13th Street Properties wherein the Foster Parties agreed to finance the purchase and renovation of Building 1, and the parties agreed to split the profits, with Kodsi receiving building 1 and Attias receiving building 2.

This argument is unavailing.  A course of dealing is defined as "a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."  In Complaint of Moran Philadelphia, 175 F. Supp. 3d 508, 518 (E.D. Pa. 2016) (quoting Restatement (Second) of Contracts § 223(1) (1979)).  "Unless otherwise agreed, a course of dealing between the parties gives meaning to or supplements or qualifies their agreement.  Evidence of a prior course of dealing can thus establish a party's awareness of a consent to intended contractual terms."  Id.  However, "[c]ourse of dealing, which is admissible to explain or supplement even a fully integrated writing . . ., should not be permitted to be used as a 'bootstrap' to avoid the stricter provisions of the parol evidence rule for complete and exclusive writings." Precision Printing Co., Inc. v. Unisource Worldwide, Inc., 993 F. Supp. 338, 355 n.15 (W.D. Pa. 1998). A court should not, under the guise of interpretation, use course of dealing to change the obligations of the parties under contract and include terms not assented to by the parties.  Waterford Mortg. Co. v. Integrated Alarm Servs. Grp., Inc., No. 06-cv-3967, 2008 WL 4589630, at *3 (E.D. Pa. Oct. 14, 2008).

20

Here, the Attias Parties invoke the course of dealing principle for a prohibited purpose—to add terms to the Agreement of Sale.  Based on bareboned facts about other real estate transactions that the parties' entered into, the Attias Parties seek to establish that the written Agreement of Sale regarding the 13th Street Property mistakenly failed to include provisions regarding:  (1) the sale of both buildings by the Attias Parties to the Foster Parties; (2) the renovation of building 1 by Attias using the down payment; (3) payment of the remainder of the purchase price by the Foster Parties; (4) renovation of building 2 by the Attias Parties; and (5) the sale of building 2 by the Foster Parties to the Attias Parties for $1.4 million representing half of Kodsi's investment minus $500,000 for a parcel of land adjacent to Building 1.  The Attias Parties offer no evidence of a prior course of dealing that could establish such specific terms or clarify any ambiguity in the Agreement of Sale.

> d.    *Extrinsic Evidence of the Foster Parties' Fraud*

In a final effort to sidestep the parol evidence rule, the Attias Parties contend that evidence of preliminary negotiations, conversations, and verbal agreements is admissible where a party has engaged in fraud.  According to the Attias Parties, the Foster Parties made "precontractual misrepresentations regarding the purpose and nature of their investment in the 13th Street Property," by "falsely represent[ing] that title to building 2 would be transferred to Attias and that the agreed upon transfer of title could not be set forth in the Residential Contract if Kodsi was going to satisfy the requirements for the Section 1031 exchange." (Attias Parties' Resp. Opp'n Summ. J. 14.)  The Attias Parties also contend that the Foster Parties then unilaterally drafted the Agreement of Sale and purposefully omitted the crucial term that building 2 of the 13th Street Property would be re-conveyed to Attias or his designee.  The Attias Parties claim that the parol evidence rule permits extrinsic evidence of the fraudulent misrepresentations and failures to include material terms in the Agreement of Sale.

The United States Court of Appeals for the Third Circuit has directly addressed this issue in SodexoMAGIC, LLC v. Drexel University, 24 F.4[th] 183 (3d Cir. 2022).  There, the Third Circuit acknowledged that the parol evidence rule does not prevent the use of extrinsic evidence for other

purposes, and "for fraudulent inducement claims, the purpose of extrinsic evidence is to prove a precontractual misrepresentation or concealment—not to alter or vary the terms of the contract." Id. at 213. "Thus, the parol evidence rule *acting alone* does not prevent fraudulent inducement claims arising out of integrated contracts." Id. (emphasis in original).  Where, however, a contract contains a "fraud-insulating clause," such a clause "prevent[s] a party from satisfying the justifiable-reliance element of a fraudulent inducement claim." Id. "One such fraud-insulating term is a no-reliance clause, through which a party expressly disclaims reliance on another party's precontractual representations." Id. at 214. "When an integrated contract includes a fraud-insulating term—to form what may be called an 'integration-plus' contract—that extends the reach of the parol evidence rule.  In that circumstance, the parol evidence rule prevents the use of extrinsic evidence to vary the fraud-insulating term.  And without such evidence, it is virtually impossible to establish the justifiable reliance element needed for a fraud claim." Id.  In other words, "a party cannot be said to have justifiably relied on prior *representations* that he has superseded and disclaimed." Id. (quoting Toy v. Metro. Life Ins., 928 A.2d 186, 207 (Pa. 2007)) (emphasis in original).

Here, the Agreement of Sale contains such an "integration-plus" clause, which states: "[a]ll prior understandings, agreements, representations and warranties, oral or written, between Seller and purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, *neither part[y] relying upon any statement made by anyone else that is not set forth in this contract*." (Am. Compl., Ex. 1 ¶ 28(a) (emphasis added).)  Given that provision, and under the Third Circuit's clear pronouncement in SodexoMAGIC, the Attias Parties cannot prove justifiable reliance on Kodsi's prior representation that title to building 2 would be transferred to Attias.  In turn, the Attias Parties are precluded from producing extrinsic evidence to establish that the Agreement of Sale omitted crucial terms.[18]

---

[18]     The Attias Parties also bring a separate claim for fraudulent inducement that argues justifiable reliance on the Foster Parties' oral representations (Count V of the Attias Amended Complaint).  Because

*e.*     *Conclusion as to Breach of Contract Claim*

In light of the foregoing, I will grant summary judgment in favor of the Foster Parties on the Attias Parties' breach of contract claim. As set forth above, Kodsi was not a party to the contract, and, as such, he cannot be liable for breach of contract. With respect to 532 Brooklyn, the parol evidence rule precludes any extrinsic evidence regarding the parties' prior agreement on the 13th Street Property.[19]

## B.     **Fraudulent Transfer Claims**

The Foster Parties next move for summary judgment on the Attias Parties' fraudulent transfer claims against 532 Brooklyn (Count I of the Attias Parties' Amended Counterclaim and Count III of the Attias Parties' Amended Complaint). The Attias Parties premise this claim on 532 Brooklyn's May 16, 2018 sale of the 13th Street Property to an entity known as 5824 N. 13th Street, LLC, which is an entity owned and managed by an individual named Lael Shultz. The Attias Parties aver, in their Amended Complaint, that an $8 million mortgage was placed on that property, and that Kodsi and 532 Brooklyn are now renovating that property with Shultz, to the exclusion of Attias. (Attias Action, Am. Compl. ¶¶ 33–35.)[20]

The Pennsylvania Uniform Voidable Transactions Act, 12 Pa.C.S. § 5101, et seq. (the "Act") allows creditors to void certain transfers of assets made by a debtor. It provides that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (i) was engaged or was about to engage in a business or a transaction for which

---

the Attias Parties cannot prove justifiable reliance for the reasons set forth above, I will grant summary judgment on this claim as well.

[19]     The Foster Parties also allege that the Attias Parties have no admissible evidence of damages on their breach of contract claim. Having dismissed this claim on other grounds, I need not address this argument.

[20]     Notably, neither party submits any evidence on these allegations.

the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa. Cons. Stat. § 5104(a).  The Act defines an "[a]sset" as the "[p]roperty of a debtor."  Id. § 5101(b).

A "[t]ransfer" is "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset."  Id.

Section 5107 of the Act then sets forth the available equitable remedies to the creditor:

> In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee or obligee) and 5109 (relating to extinguishment of claim for relief), may obtain:
>
> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.
>
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law.
>
> (3) Subject to the applicable principles of equity and in accordance with applicable rules of civil procedure:
>
> > (i)   an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> >
> > (ii)  appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> >
> > (iii) any other relief the circumstances may require.

12 Pa. Cons. Stat. § 5107(a).

Section 5108(b) goes on to enumerate the available monetary damages as follows:

> To the extent a transfer is avoidable in an action by creditor under section 5107(a)(1) (relating to the remedies of creditor), the following rules apply:
>
> (1) Except as otherwise provided in this section, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered against:
>
> > (i)   The first transferee of the asset or the person for whose benefit the transfer was made; or

(ii)  An immediate or mediate transferee of the first transferee, other than:
    (A) A good faith transferee that took for value; or
    (B) An immediate or mediate good faith transferee of a person described in clause (A).

(2)  Recovery under section 5107(a)(1) or (b) of or from the asset transferred or its proceeds, by levy or otherwise, is available only against a person described in paragraph (1).

12 Pa. Cons. Stat. § 5108(b).

Here, the Attias Parties' fraudulent transfer claim and fraudulent transfer counterclaim both seek only monetary damages—and not equitable relief— in the form of "an award of compensatory damages, consequential damages, attorney's fees, costs, and such other relief as the Court deems appropriate." (Attias Compl. p.12 "Wherefore" Cl.; Attias Countercl. p. 18 "Wherefore" Cl.)  Under 12 Pa.C.S. § 5108(b)(1)(i) & (2), any such monetary claim can only be made against the transferee of the 13th Street Property, who is Kodsi's business partner, Lael Shultz.  As Shultz is not a named party to this action, the Attias Parties' request for monetary damages is invalid.

The Attias Parties respond with two arguments.  First, they contend that § 5108(b)(1)(i) also allows recovery against "the person for whose benefit the transfer was made."  Id.  With little analysis, the Attias Parties then contend that 532 Brooklyn, as the original transferor, is a "person for whose benefit the transfer was made."

This argument is misplaced.  The term "person for whose benefit the transfer was made" has been held to be "a guarantor or debtor—someone who receives the benefit but not the money."  United States v. Rocky Mtn. Holdings, Inc., 782 F. Supp. 2d 106, 121 (E.D. Pa. 2011).  "Benefit occurs without the beneficiary ever holding the money or property, precisely because someone else received it."  Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 313 (S.D.N.Y. 1999).[21]  The Attias Parties produce no evidence that 532 Brooklyn was the entity "for whose benefit the transfer was made."

---

[21]  The Attias Parties' citations are inapposite.  In In re Titus, 916 F.3d 293, 299 (3d Cir. 2019), the Third Circuit found that the transferor was also a transferee subject to PUFTA transferee liability because

Alternatively, the Attias Parties contend that the Act "explicitly mentions remedies available under law as well as equity" and that such damages have been found to include punitive damages. <u>Klein v. Weidner</u>, 729 F.3d 280, 288 (3d Cir. 2013). This argument is incorrect. The Act explicitly states that "[r]ecovery under section 5107(a)(1) or (b) of or from the asset transferred or its proceeds, by levy or otherwise, is available *only against a person described in paragraph (1)*." 12 Pa.C.S. § 5108(b)(2) (emphasis added); <u>see also</u> <u>Chestnut Street Consol., LLC v. Dawara</u>, No. 21-cv-3046, 2022 WL 3051830, at *17–18 (E.D. Pa. Aug. 3, 2022) (discussing who is liable for monetary damages under PUVTA). As the Attias Parties concede, 532 Brooklyn does not own any portion of the 13th Street Property. Thus, it is not the transferee subject to these damage provisions.

In short, absent an available basis for recovery under the Act against 532 Brooklyn, this claim must be dismissed.


**C.     <u>Unjust Enrichment Claims</u>**

In Count II of the Amended Counterclaim and Count IV of the Amended Complaint, the Attias parties raised a claim of unjust enrichment against Kodsi and 532 Brooklyn. I previously dismissed with prejudice the unjust enrichment claim in the Amended Counterclaim, finding that (a) the relationship between 532 Brooklyn and the Attias Parties was governed by an explicit contract that precludes the unjust

---

he transferred the money to his spouse. As he shared ownership of his spouse's account as a tenant by the entireties, he was also a transferee of the property. <u>Id.</u> By contrast here, there is no showing that 532 Brooklyn retained any ownership interest in the 13th Street Property.

The Attias Parties also cite <u>Brosky v. MJC Indus., Inc.</u>, No. 2138 EDA 2016, 2017 WL 2274624 (Pa. Super. Ct. May 24, 2017) for the proposition that, "[t]he statute clearly authorizes a creditor to seek damages from the original transferor OR the transferee OR the asset transferred." <u>Id.</u> at *18 (capitalization in original). I find this citation misplaced. Primarily, the singular quotation referenced by the Attias Parties was in the trial court's decision, not in the Pennsylvania Superior Court's opinion. Moreover, in <u>Brosky</u>, the trial court was considering only whether, under PUVTA, the transferor of the property at issue was "an indispensable party" in an action for relief against a transfer or obligation. The court found that the transferor was not an indispensable party, and that a creditor need not obtain a judgment against a debtor transferor in order to proceed under the Act. <u>Id.</u>

enrichment claim, and (b) the Attias Parties had failed to plead facts suggesting that they had conferred any benefit upon either Foster and DEMK (against whom the claim was brought).

The unjust enrichment claim in Attias Action Amended Complaint repeats the same allegations regarding the 13th Street Property but presses the claim against Kodsi and 532 Brooklyn for the alleged wrongful transfer of title to the 13th Street Property and retention of mortgage proceeds.  To the extent the Attias Parties reallege the unjust enrichment claim against 532 Brooklyn, I have already found that such a claim is untenable in light of the existence of a contract.  Bair v. Purcell, 500 F. Supp. 2d 468, 495 (M.D. Pa. 2007) (citing Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) ("the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon written agreement or express contract, regardless of how hash the provisions of such contracts may seem in the light of subsequent happenings.").   For the same reason I previously dismissed this claim from the Amended Counterclaim, I will grant the Foster Parties' Motion for Summary Judgment.  See Foster v. Attias, Nos. 18-cv-4853, 19-cv-866, 2020 WL 5439360, at *7 (E.D. Pa. Sept. 10, 2020).

With respect to the unjust enrichment claim against Kodsi, this claim likewise fails.  An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law.  Sevast v. Kaouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007).  A plaintiff who claims unjust enrichment must "show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider."  Bair, 500 F. Supp. 2d at 495 (quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987)).   Under Pennsylvania law, a party seeking to recover under an unjust enrichment theory must show: (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such a benefit by the defendant; and (3) the defendant accepted and retained such benefit under circumstances where it would be inequitable for the defendant to retain the benefit without payment of value.  Global Ground Support, LLC v. Glazer Enter., Inc., 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008).

Here, the Attias Parties have alleged, without evidence, that Kodsi was unjustly enriched by the wrongful transfer of title to the 13th Street Property, his refusal to transfer the title of building 2 of the Property to Attias, and his failure to pay Marion Court LLC the monies owed under the Promissory Note. At the motion for summary judgment stage, such bald allegations provide an insufficient basis to proceed on this claim.[22]  The Attias Parties have not cited to any evidence on which a reasonable jury could find that Kodsi was individually enriched by the sale of the 13th Street Property.  Accordingly, I will grant the Foster Parties' Motion for Summary Judgment on this claim.

### D. Attias Parties Claims Related to the WPHL Properties

The Attias Parties Amended Complaint brings two causes of action related to the WPHL Properties.  Count VII seeks the remedy of specific performance.  Count VIII alleges breach of contract. The Foster Parties move for summary judgment as to both claims.

### 1. Specific Performance

In Count VII of the Attias Amended Complaint, the Attias Parties contend that, pursuant to a written agreement, WPHL agreed to sell the WPHL Properties to Attias for the sum of $220,000 and provided that the closing for the sale of the WPHL Properties would take place before May 1, 2018.  On May 8, 2018, Attias secured a mortgage loan commitment in the amount of $265,000 for the WPHL Properties, as well as for a property at 9 W. Broad Street, Paulsboro, NJ 08066.  (Attias Parties' Ex. KK.) The Attias Parties now seek specific performance of the WPHL Agreement by requiring WPHL to convey the properties.  (Am. Compl. ¶ 108.)

The Foster Parties claim entitlement to summary judgment on this claim because the Attias Parties "concede they have an adequate remedy at law."  (Foster Parties' Mot. Summ. J. 16.)  The Foster Parties premise their argument on the Pennsylvania Supreme Court decision in Trachtenburg v. Sibarco Stations,

---

[22]      Indeed, the Attias Parties argue, in their brief, that "[t]he Foster Parties *motion to dismiss* the Attias Parties unjust enrichment claims should be denied."  (Attias Parties' Opp'n Mot. Summ. J. 24 (emphasis added).)

Inc., 384 A.2d 1209 (Pa. 1978), and the Attias Parties' proposed trial exhibit that demands "lost profits" for the WPHL Properties.

The Foster Parties' reliance on Trachtenburg is misplaced.  In that case, the Pennsylvania Supreme Court addressed the remedies available to a *seller* of real estate when a buyer repudiates the contract.  The Court remarked that specific performance is unavailable to *a seller* of real estate where there is an adequate legal remedy, reasoning that the functional equivalent of specific performance is the purchase price of the land and other damages.  Id. at 523.

Where, as here, the party seeking relief is a *buyer*, the analysis is different.  "Due to the unique qualities of real estate, '[c]ourts in this Commonwealth consistently have determined that specific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice.'"  Michael and Linda, LLC v. Smith, 216 A.3d 262, 267 (Pa. Super. Ct. 2019) (quoting Oliver v. Ball, 136 A.2d 162, 167 (Pa. Super. 2016)).  Accordingly, I will deny the Foster Parties' Motion on this issue.

        2.  Breach of Contract

In connection with the WPHL Properties, the Attias Parties also bring a claim for breach of contract, alleging that the Foster Parties' failure to convey the WPHL Properties to Attias pursuant the WPHL Agreement has resulted in monetary damages including lost profits.

The Foster Parties now contend that the Attias Parties cannot recover lost profits in connection with this failed transaction, relying on the Pennsylvania Superior Court case of GMH Assocs., Inc. v. Prudential Realty Grp., 752 A.2d 889, 905 (Pa. Super Ct. 2000).  In that case the Court concluded that, "[i]t is well settled that a party who is injured as a consequence of another's party breach of a valid oral contract subject to the statute of frauds may recover reliance damages only."  Id. at 905.

Again, I find the Foster Parties' argument does not apply.  Importantly, GMH Assocs. involved an *oral* contract.  Where, as here, an agreement for the sale of real estate is written, the Pennsylvania Superior Court has recognized that buyer can be granted specific performance and can also "recover for

the lost profits he would have realized if the agreement had been timely honored and which profits Seller has continued to enjoy." Quinn v. Bupp, 955 A.2d 1014, 1021 (Pa. Super. Ct. 2008). The "'general rule of law applicable for loss of profits' in a contract action permits recovery of lost profits when 'there is evidence to establish them with reasonable certainty,' 'there is evidence to show that they were the proximate cause of the wrong' and if 'they were reasonably foreseeable.'" Id. (quoting Company Image Knitware, Ltd. v. Mothers Work, Inc., 909 A.2d 324, 336 (Pa. Super. Ct. 2006)).

In an alternative argument, the Foster Parties allege that the Attias Parties' lost profit claim is speculative because "[i]t assumes the Attias Parties would have fetched the same price as WPHL for WPHL Properties . . . [and] assumes that the difference between the amount WPHL paid for the properties and the amount it sold the properties was profit and that there were not expenses incurred by WPHL during its ownership." (Foster Parties' Mot. for Summ. J. 17.) This cursory argument does not provide a basis on which I can grant summary judgment. At trial, the Attias Parties will bear the burden of proving lost profits "with reasonable certainty," and the Foster Parties will have the opportunity to challenge that evidence.

### E.      Failure to Make Rule 26(a)(1)(A) Disclosures

The Foster Parties' final argument in their Motion for Summary Judgment contends that I should dismiss the Amended Complaint with prejudice because the Attias Parties failed to make initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(A). The Foster Parties note that, in their joint Rule 26(f) plan, the parties agreed to exchange initial disclosures on or before July 30, 2019, but the Attias Parties failed to do so. As such, the Foster Parties contend that Federal Rule of Civil Procedure 37 allows the court to either dismiss the Amended Complaint or exclude all of the Attias Parties' evidence at trial.

The Foster Parties' argument is nothing more than a belated discovery motion. They contend that the initial disclosures were due on or before July 30, 2019, yet they waited almost three years, until the eve of the first trial listing, to file a motion *in limine* regarding this alleged failure. When trial was continued, the Foster Parties then included this argument in their Motion for Summary Judgment. The

Foster Parties fail to explain why they did not seek the missing discovery prior to the close of the discovery deadline.  Nor do they establish that they were unable to obtain the needed information during discovery. Finally, they fail to address why their own lack of diligence in pursuing discovery entitles them to obtain the extreme sanction of a grant of summary judgment or exclusion of all of the Attias Parties' claims. Accordingly, summary judgment on this argument is denied.

> ### G.    Conclusions as to Foster Parties' Motion for Summary Judgment

For the foregoing reasons, I will grant the Foster Parties' Motion for Summary Judgment on the Attias Parties' claims for:  (a) breach of contract regarding the 13th Street Property (Count I of the Attias Amended Complaint); (b) fraudulent transfer (Count III of the Attias Amended Complaint and Count I of the Attias Amended Counterclaim); (c) unjust enrichment (Count IV of the Attias Amended Complaint); and (d) fraud (Count V of the Attias Amended Complaint).[23]  The Motion is denied in all other respects.

## IV.    ATTIAS PARTIES' MOTION FOR SUMMARY JUDGMENT

> ### A.    Attias Parties' Breach of Contract Claims

The Attias Parties first seek an affirmative finding of summary judgment on Count I of their Amended Complaint for breach of the Moshe/Alain Agreement,[24] and Counts VII and VIII of their

---

[23]    In their Motion for Summary Judgment, the Attias Parties represent that they "resolved the sixth count for conversion by successfully bringing a replevin action."  (Attias Parties' Resp. Opp'n Summ. J. 1 n.1.)  Accordingly, I deem Count VI voluntarily withdrawn.

[24]    As discussed in detail above, Count I of the Attias Amended Complaint alleges a breach of contract claim related to an alleged oral agreement regarding the 13th Street Property.  For the reasons previously explained, I will grant summary judgment in favor of the Foster Parties on that claim.

Amended Complaint for breach of contract/specific performance claims relating to the WPHL Properties. I address each claim individually.

### 1. Moshe/Alain Agreement

The Attias Parties first contend that they are entitled to summary judgment for breach of contract on the January 2018 "Moshe/Alain Agreement," which purported to set forth the rights and responsibilities of Attias and Kodsi, and their respective corporate entities, with respect to the "sale, purchase and distribution of certain properties, the transfer of certain membership interests in the Companies, and for the completion of certain ongoing and future development projects." (Attias Parties' Ex. BB.) The Attias Parties detail the existence of mutual intent to be bound, sufficiently definite material terms, and mutual consideration, all in an effort to establish their right to specific performance of the contract.

The fundamental flaw in the Attias Parties' argument is that neither the Amended Complaint in the Attias Action nor the Amended Counterclaim in the Foster Action raised a breach of contract claim related to the Moshe/Alain Agreement. As the Attias Parties never amended their pleadings to include a cause of action relating to this contract, and because these cases are well over three years old, the Attias Parties may not press a brand-new claim at this summary judgment stage. Accordingly, the Attias Parties' Motion for Summary Judgment on this claim will be denied.

### 2. The WPHL Agreement

In addition, the Attias Parties seek summary judgment on their claim for specific performance under the WPHL Agreement. They contend that the WPHL Agreement provides that WPHL Housing would sell the WPHL Properties to Attias or his designee for the "combined purchase price" of $220,000. Attias claims to have secured a loan commitment from a mortgage company to purchase the three WPHL Properties in advance of the closing date, but that, on May 16, 2018, Kodsi and Andrew Bank placed a $300,000 mortgage on the WPHL Properties, thus preventing Attias from consummating the purchase.

As such, the Attias Parties assert that they are entitled to specific performance of the WPHL contract as a matter of law.

The Attias Parties, however, fail to meet their burden eliminating any genuine issue of material fact on all elements of a breach of contract claim.  Although Attias produces evidence that, on May 8, 2018, he secured a mortgage loan commitment in the amount of $265,000 for the WPHL Properties, as well as for a property at 9 W. Broad Street, Paulsboro, NJ 08066, he fails to acknowledge that the settlement date for the sale was May 1, 2018.  (Attias Parties' Ex. KK; Attias Parties' Ex. CC, p. 3.)  Under the WPHL Agreement, Attias had the option to extend closing for three additional months upon payment to WPHL of $2,200 for each month of extension.  (Attias Parties Ex. CC.)  Attias offers no evidence to show that he provided the requisite consideration for the extended settlement date.  Indeed, aside from the undisputed fact that Attias never consummated the purchase of this property, the record is devoid of any proof whatsoever as to how any of the parties performed under this Agreement.  Accordingly, summary judgment is inappropriate.[25]

**B.  <u>The Foster Parties' RICO Claims</u>**

In Counts I and II of their Amended Complaint, the Foster Parties bring claims for RICO violations under 18 U.S.C. § 1962(c) and for RICO conspiracy under 18 U.S.C. § 1962(d).  The Attias Parties seek summary judgment on these claims because the alleged breaches of contract by the Attias Parties are not RICO predicate acts occurring through a pattern of racketeering activity.

Section 1962(c) of RICO provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

---

[25]    The Foster Parties did not even respond to this argument.  But for the fact that the Attias Parties bear the burden of proving all the elements of their own claim, the Foster Parties' silence would otherwise be grounds for a grant of summary judgment.

18 U.S.C. § 1962(c).  To successfully state a civil RICO violation under § 1962(c), plaintiffs must allege

that a "person" employed by or associated with an enterprise engaged in the following: "(1) conduct (2)

of an enterprise (3) through a pattern (4) of racketeering activity."  Camiolo v. State Farm Fire & Cas.

Co., 334 F.3d 345, 364 (3d Cir. 2003) (quoting Sedima. S.P.R.L v. Imrex Co., 473 U.S. 479, 496 (1985)).

Racketeering activity is defined in Section 1961(1) to include acts indictable under certain

provisions of the federal crimes code.  Mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 are included.

See Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 802–03 (E.D. Pa. 2007).  A pattern of

racketeering activity requires at least two acts of racketeering.  18 U.S.C. § 1961(5).  The two predicate

acts necessary to establish a pattern must (1) occur within ten years of each other; (2) be "related," and

(3) "amount to or pose a threat of continued criminal activity."  United States v. Bergrin, 650 F.3d 257,

266–67 (3d Cir. 2011).  "Relatedness" is demonstrated when racketeering predicates "have the same or

similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by

distinguishing characteristics and not isolated events."  Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468,

483 (E.D. Pa. 2014) (quoting Mega Concrete, Inc. v. Smith, No. 09-cv-4234, 2013 WL 3716515, at *10

(E.D. Pa. July 15, 2013)).  "Continuity" is "a closed- and open-ended concept, referring either to a closed

period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of

repetition."  Id. (quoting H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989)).

Not every single scheme comprising two or more predicate acts will constitute a pattern.  Kehr

Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412 (3d Cir. 1991).  "A short-term scheme threatening

no future criminal activity will not suffice."  Id. (quoting H.J. Inc., 492 U.S. at 242).  Other factors are

relevant to the "pattern" inquiry including the number of unlawful acts, the length of time over which the

acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the

character of the unlawful activity.  Id.

Here, the Foster Parties' Amended Complaint originally alleged multiple predicate acts of

purported racketeering activity involving wire fraud involving the following:

- In May 2016, Attias falsely represented to Kodsi, as a representative of DEMK, that he would use funds provided by Foster to purchase the Locust Avenue Properties in the name of a limited liability company to be owned by both Attias and DEMK.

- On June 20, 2016, the Attias Parties cause DEMK to wire $400,000 to fund the development of the Small Properties based on Attias's representation that he would acquire those properties.

- On December 8, 2016, Attias caused Foster to wire $350,000 to fund the development of Unity Street based on Attias's December 2016 misrepresentation that he would use the funds to purchase Unity Street in Foster's name.

- On April 4, 2017, Attias caused Foster to wire $360,000 to fund the development in Lippincott Street based on Attias's July 2016 representation that he would use the funds to purchase title to the Lippincott Properties in Foster's name.

- On January 28, 2018, several of the Foster Parties entered into a written agreement with Attias and Lippincott Lofts, LLC to unwind the various joint ventures and return capital to Plaintiffs (the "Unwinding Agreement").  This Agreement was transmitted by email and Attias failed to comply with it.

(Foster Action, Am. Compl. ¶¶ 87–89.)  The Foster Parties contended that the Attias Parties had a pattern of racketeering activity defined by the formation of various entities for separate transactions, soliciting money to be funneled through each entity, and then misappropriating funds for other than their intended use.  (Foster Parties' Resp. Opp'n Summ. J. 11.)  I previously found that such allegations were sufficient to withstand a motion to dismiss.

Now, at the summary judgment stage, no evidence has been produced to support these allegations. Indeed, in the face of a motion for summary judgment in which the Attias Parties have identified a lack of evidence to show a pattern of racketeering activity, the Foster Parties, as the non-moving party, bear the burden of presenting sufficient evidence of a genuine issue of material fact.  Yet, the Foster Parties present no evidence on which a jury could find that the Attias Parties agreed to acquire the Locust Avenue Properties, Unity Street, the Lippincott Properties in the name of any of the Foster Parties.  Nor is there any evidence showing that the Attias Parties failed to acquire the Small Properties with the provided funds. In fact, the sole evidence to which the Foster Parties cite in support of their RICO allegations involves the Attias Parties' alleged fraudulent use of funds provided by Foster designated for acquisition of the 13th

Street Property—a transaction that was never included among the pattern of racketeering activity set forth in the Amended Complaint.  That singular transaction, even taken as true, cannot, as a matter of law, constitute a pattern of racketeering activity on which a RICO violation may be based.  Absent any evidence which creates a genuine issue of material fact on this claim, I will grant the Attias Parties' Motion for Summary Judgment on this claim.

This absence of evidence also implicates the Foster Parties' claim under 18 U.S.C. § 1962(d), which makes it unlawful to "conspire to violate any of the provisions of subsections (a), (b), or (c)."  Id. Although a § 1962(d) conspiracy claim is not dependent upon successfully bringing a § 1962(c) claim, a plaintiff must still establish the period of the conspiracy, the object of the conspiracy, and the certain allegations of the alleged conspirators taken to achieve that purpose.  Breslin v. Brainard, No. 01-cv-7269, 2003 WL 22351297, at *13 (E.D. Pa. Oct. 14, 2003).  "Underlying a § 1962(d) claim is the requirement that a plaintiff must show that defendants agreed to the commission of a 'pattern of racketeering.'"  Id. (quoting Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990).

As set forth above, the Foster Parties have failed to adduce any evidence on which a jury could find a pattern of racketeering.  They have also not produced evidence to create an issue of material fact on whether the Attias Parties agreed to the commission of a pattern of racketeering.  Accordingly, I will grant summary judgment on this claim as well.

## V.    CONCLUSION

While these summary judgment motions did not resolve the entirety of the pending cases, they served two functions.  First, the motions highlighted the fundamental lack of development of, and evidentiary support for, the excessive number of claims at issue here.  At trial on the remaining issues, the parties will not be permitted to make unsubstantiated arguments, present inadmissible evidence, or produce evidence that has never been turned over in discovery.

Second, the parties' disputes have now been narrowed and involve only a few claims and a few of the property transactions, which will be the subject of a trial.  The following claims are the only claims and transactions on which a trial will be held:

*Foster Parties' Amended Complaint*
- Count III - Common law fraud (Foster and DEMK v. Attias and Unity Loft)
- Count VI – Breach of contract regarding the Moshe/Alain Agreement (aka, the "Unwinding Agreement") for failure to finish renovation of 13th Street Property (532 Brooklyn v. Attias)
- Count VII – Breach of contract regarding the Moshe/Alain Agreement (aka, the "Unwinding Agreement") for failure to pay $350,000 (Foster v. Attias)

*Attias Parties' Amended Complaint*
- Count II – Breach of the September 8, 2016 Promissory Note (Marion Court v. 532 Brooklyn)
- Count VII – Specific performance of the WPHL Agreement (Attias v. WPHL)
- Count VIII – Breach of contract of the WPHL Agreement (Attias v. WPHL

*WPHL's Counterclaim in the Attias Action*
- Count I – Breach of fiduciary duty (WPHL v. Attias)
- Count II – Breach of contract (WPHL v. Attias)

An appropriate Order follows.